OPINION
{¶ 1} Plaintiff-appellant, Tiffani Rose (hereinafter "appellant"), appeals the decision of the Court of Common Pleas of Marion County to grant a motion for summary judgment in favor of appellee, Frederick C. Smith Clinic, Inc. (hereinafter "appellee").
 {¶ 2} On August 6, 1998, appellant underwent a voluntary sterilization procedure. The procedure, a tubal ligation, was performed by Dr. Cris Garza, who, at the time, was employed by the appellee. Prior to the procedure, appellant signed a disclosure form advising her that, despite surgery, there was a statistical failure rate of one in four hundred. If the procedure failed, it was possible appellant could become pregnant.
 {¶ 3} Following the procedure, a pathologist analyzed a specimen removed from appellant that was purported to be the appellant's right fallopian tube. The pathologist prepared a report on August 7, 1998 which indicated that the specimen designated as the right side fallopian tube was misidentified and the fallopian tube was not the material of the specimen.
 {¶ 4} Around February of 1999 appellant began to suspect she was pregnant. On March 12, 1999, appellant visited Dr. Solie, another employee of appellee, who confirmed that appellant was, indeed, pregnant.
 {¶ 5} During her March 12, 1999 visit with Dr. Solie, appellant attempted to determine whether her pregnancy was due to the failure of the tubal ligation that was performed approximately seven months earlier. According to appellant's affidavit, Dr. Solie's response was that "these things happen" and "there is a failure rate." Appellant maintains that Dr. Solie did not discuss the pathology report with her.
 {¶ 6} Following her visit with Dr. Solie, appellant had her medical records transferred from appellee's office. On March 30, 1999 appellant sought treatment for her pregnancy with Dr. Brad Campbell. On her visit with him, appellant discussed the tubal ligation procedure done by Dr. Garza. According to appellant, she had no reason to believe that the procedure was done incorrectly, as she was told by Dr. Campbell that "these things happen" and "it did not mean that anything was done wrong."
 {¶ 7} Following the birth of her child, appellant underwent a second tubal ligation procedure. The procedure was performed by Dr. Campbell on February 14, 2000. During the procedure, Dr. Campbell discovered that the right side fallopian tube was still intact and fully functional and had never been surgically treated.
 {¶ 8} On February 14, 2001, one year after her second sterilization procedure, appellant delivered a "180 day" letter to appellee, pursuant to R.C. 2305.11. On August 13, 2001, appellant filed a complaint against appellee alleging negligence.
 {¶ 9} Appellee filed a Motion for Summary Judgment and an Amended Motion for Summary Judgment on June 6, 2003 and December 19, 2003, respectively. On February 11, 2004, appellant filed a memorandum and affidavit in opposition to appellee's motion for summary judgment.
 {¶ 10} On March 15, 2004, the trial court, by judgment entry, granted appellee's Amended Motion for Summary Judgment. The trial court found that the appellant's complaint was filed beyond the statute of limitations and, therefore, there was no genuine issue of material fact. The trial court determined that the "cognizable event" that triggered the statute of limitations was not Dr. Campbell's discovery that the first procedure had not been completely performed, which occurred February 14, 2000, but rather appellant's discovery of her pregnancy, which occurred on March 12, 1999. Therefore, the trial court concluded that appellant had until March 12, 2000 to file her claim. Because appellant's complaint was not filed until August 13, 2001, more than a year beyond the expiration of the statutory time period, her claim was barred.
 {¶ 11} It is from this decision that appellant appeals and sets forth one assignment of error for our review.
 Assignment of Error No. I The trial court erred in granting the Amended Motion forSummary Judgment of the Defendant-Appellee, Fredrick C. SmithClinic, Inc. by finding, "The statute of limitations accrued whenPlaintiff discovered that she was pregnant" and "the discovery ofher pregnancy is the cognizable event which should have made heraware that she was still capable of becoming pregnant, that thiscondition was related to the failure of the tubal ligationperformed by Dr. Garza and that further inquiry was necessary."This finding by the trial court is contrary to law and is anabuse of discretion.
 {¶ 12} Appellant asserts that the trial court's grant of summary judgment was in error, as it was impossible for her to know that her tubal ligation was incorrectly performed until her second sterilization procedure. Although appellant concedes that upon discovering she was pregnant, she realized that the sterilization procedure had failed, she contends that consulting with two physicians was a reasonable attempt to discover whether her pregnancy was the result of malpractice or simply from the normal failure rate of one in four hundred. Appellant, therefore, argues that the second sterilization procedure and not the discovery of her pregnancy triggered the statute of limitations and the trial court erred by finding otherwise.
 {¶ 13} The standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'l Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, summary judgment shall not be rendered unless it appears that reasonable minds can come to only one conclusion which "is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 14} Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E).
 {¶ 15} R.C. 2305.11(B)(1)provides that "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." The Ohio Supreme Court has previously determined that a cause of action for medical malpractice accrues, and the R.C. 2305.11 limitations period begins to run, "either (1) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (2) when the physician-patient relationship for that condition terminates, whichever occurs later." Akers v.Alonzo (1992), 65 Ohio St.3d 422, citing Oliver v. KaiserCommunity Health Found. (1983), 5 Ohio St.3d 111, syllabus.
 {¶ 16} As previously held by the Ohio Supreme Court, a patient "discovers" or "should have discovered" his or her injury upon the happening of a "cognizable event." Allenius v. Thomas
(1989), 42 Ohio St.3d 131. A cognizable event is one "which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." Allenius v.Thomas (1989), 42 Ohio St.3d 131, syllabus. As these standards indicate, the determination of when a cause of action accrues and the statute of limitations begins to run involves an analysis of the facts on a case-by-case basis. See Shadler v. Purdy (1989),64 Ohio App.3d 98, 103.
 {¶ 17} The appellee urges this court to rely, as did the trial court, on our previous decision in Hume v. Rhee (March 24, 1986), 3d Dist. No. 17-84-22, to determine whether appellant's claim was filed beyond the statute of limitations. InHume, the plaintiff underwent a surgical sterilization procedure and later discovered she had become pregnant. The plaintiff gave birth to a child and then underwent a second sterilization procedure. Id. It was not until after the second procedure when plaintiff discovered that the first procedure had been improperly performed. Id. Plaintiff filed a medical malpractice action approximately ten months after the second procedure. Id. The defendant physician in the case filed a motion for summary judgment, which was granted by the trial court on a finding that plaintiff had not filed her claim within the statutory time limit. Id.
 {¶ 18} The plaintiff in Hume conceded that the discovery of the injury occurred when she discovered she was pregnant, however, she claimed that she did not have knowledge of a cause of action at that time to activate the statute of limitations. Id. The Hume plaintiff claimed that she believed the sterilization procedure might not work and that she was one of the minority of cases where the procedure had failed. Id. This court, however, reasoned that the plaintiff knew the sterilization procedure was unsuccessful when she received a positive pregnancy result. Id. At that time, "the [plaintiff] knew or reasonably should have known that [plaintiff]'s pregnancy was proximately caused or permitted by the ineffective sterilization procedure." Id. "Whether the [plaintiff] knew that [the doctor]'s act constituted negligence is not material to the discovery." Id.
 {¶ 19} In the twenty-eight years since we decided Hume,
however, the Ohio Supreme Court has issued several decisions clarifying the test for determining the commencement of medical malpractice actions. As stated herein, a patient discovers or should have discovered her injury upon the happening of a "cognizable event." Allenius v. Thomas (1989),42 Ohio St.3d 131. "The cognizable event analysis allows a patient to reasonably rely on his physician's assurances while placing a continuing duty on the medical profession to act with the requisite skill and care." Herr v. Robinson Memorial Hospital
(1990), 49 Ohio St.3d 6, 9-10.
 {¶ 20} In the case sub judice, appellant had been advised before her tubal ligation was performed that there was a statistical failure rate of one in four hundred. Upon discovering she was pregnant, appellant sought the advice of two physicians. Both physicians informed her that "these things happen" and neither gave appellant any indication that her pregnancy was the result of an improperly performed surgical procedure. Nor did either physician acknowledge or discuss with appellant the pathology report indicating the tissue removed during the sterilization procedure was not of her fallopian tube.
 {¶ 21} Considering the particular circumstances of appellant's case, we find it distinguishable from the circumstances in Hume. The appellant herein received assurances from two physicians that her pregnancy was not caused by a procedure improperly performed, but because "these things happen;" that is, a natural failure of the procedure had occurred. Nor is there anything in the record to indicate that, while appellant was pregnant, there was any other effective method to determine whether the pregnancy resulted from natural failure or from negligence. We find the appellant's discovery of her pregnancy, therefore, was an inconclusive determinant of whether an "injury" had occurred. See Allenius,42 Ohio St.3d at 134 (holding that a test result that gives an inconclusive result of the existence of cancer was not a "cognizable event.") Holding that appellant should have known, despite two doctors' opinions to the contrary, that her pregnancy was the result of a sterilization improperly performed rather than an ineffective sterilization, would mean holding appellant to a higher degree of medical knowledge than the physicians with whom she consulted. Regarding a patient's reliance on a physician's advice, the Ohio Supreme Court has previously stated:
[T]he causes of medical problems and the effects of prescribedtreatments are not within the realm of a layman's knowledge. Thiscourt has stated long ago that `[t]he patient relies almostwholly upon the judgment of the * * * [doctor], and under theusual circumstances of each case is bound to do so * * *.'
* * *
Hence, it would be illogical to hold a patient to a higherdegree of knowledge than his treating physicians. Indeed, to saythat a patient may not reasonably rely on the assurances of atreating physician would cause irreparable harm to thedoctor-patient relationship. (emphasis in original.)
 Herr v. Robinson Memorial Hosp. (1990), 49 Ohio St.3d 6, 9.
 {¶ 22} Until appellant was informed by Dr. Campbell that one of her fallopian tubes was fully intact, she had reasonably relied upon the advice of the physicians she had consulted that her pregnancy did not necessarily mean that the sterilization procedure was incorrectly performed. Until Dr. Campbell informed appellant of his discovery on February 14, 2000, she was unaware that her pregnancy resulted from a cause other than the statistical failure rate. Therefore, we determine that the "cognizable event" occurred on February 14, 2000. Accordingly, because appellant sent appellee a "180 day" letter on February 14, 2001, we find that appellant filed her medical malpractice claim within the one-year statute of limitations set forth in R.C. 2305.11.
 {¶ 23} Appellant's assignment of error is sustained.
 {¶ 24} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 Bryant, J. and Rogers, J., concur.