[Cite as *Peters v. Akron Gen. Med. Ctr.*, 2020-Ohio-369.]

| | |
|---|---|
| STATE OF OHIO )<br>)ss:<br>COUNTY OF SUMMIT ) | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |

| | |
|---|---|
| ADAM C. PETERS, et al.<br><br>Appellants<br><br>v.<br><br>AKRON GENERAL MEDICAL CENTER,<br>et al.<br><br>Appellees | C.A. No.     29479<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE No.     CV-2017-12-5119 |

DECISION AND JOURNAL ENTRY

Dated: February 5, 2020

CALLAHAN, Judge.

{¶1}    Appellants, Adam and Tara Peters, appeal from the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Appellees, Akron General Medical Center, John Pedersen, M.D., Akron Plastic Surgeons, L.L.C., and Michael Parker, M.D.  For the reasons set forth below, this Court reverses and remands the matter for further proceedings consistent with this decision.

I.

{¶2}    On June 22, 2012, Mr. Peters was involved in a workplace accident wherein his left leg near the distal femur sustained extensive bone fractures and was denuded of cartilage.  In addition to the bone injury, Mr. Peters sustained significant soft tissue injury by way of a deep laceration extending to the bone that was contaminated with dirt and oil.  Dr. Erika Glass, an orthopedic surgeon, performed multiple surgical procedures on Mr. Peters' leg to repair the bone and to clean out the infection in the open wound.

**{¶3}** Due to the damage to his knee, Mr. Peters required a knee replacement. In preparation for the knee replacement surgery, Dr. Glass referred Mr. Peters to Dr. Pedersen for a free flap surgery to increase blood flow and healing in Mr. Peters' leg. Dr. Pedersen, along with Dr. Parker, performed the free flap surgery on March 28, 2013 at Akron General Medical Center. Mr. Peters last saw Dr. Parker on the last day of his admission for this procedure. As for Dr. Pedersen, Mr. Peters did not see him after August 2013.

**{¶4}** On June 4, 2013, Mr. Peters had an x-ray taken of his leg during his office appointment with Dr. Glass. The x-ray revealed "a metallic something" on the medial side of Mr. Peters' left leg, near the site of the free flap surgery. Dr. Glass consulted with her partner who suggested that the metal item might be a vascular clamp. Dr. Glass' office notes from June 4, 2013 reflect that they advised Mr. Peters of the presence of a vascular clamp in his leg. According to Dr. Glass, that was the extent of the discussion with Mr. Peters regarding the clamp on that day. Dr. Glass and her partner performed the knee replacement surgery eight days later, on June 12, 2013.

**{¶5}** For the next three years, Mr. Peters continued to follow-up with Dr. Glass regarding the condition of his knee and the infection. Mr. Peters also saw various infectious disease specialists and was continuously prescribed antibiotics because of the chronic infection in his leg. During this time, there were no complaints or any discussions about the clamp between Mr. Peters and Dr. Glass. Mr. Peters' primary concern was his inability to bend his knee and his very limited range of motion in the knee. Due to the chronic nature of the infection in the leg and her concern for a possible amputation, Dr. Glass declined to perform additional surgical procedures on Mr. Peters' knee to increase his range of motion.

{¶6}   Unsatisfied with his knee's limited range of motion, Mr. Peters sought a second opinion from another orthopedic surgeon, Dr. Krebs, in October 2016.   During the initial consultation, Dr. Krebs made two recommendations:  a knee revision and the removal of the clamp in Mr. Peters' leg.   The knee revision required two surgeries.   The first surgery in December 2016 removed the original prosthetic knee and the clamp in Mr. Peters' medial thigh, while the second surgery performed in May 2017 placed a new prosthetic knee.   The knee revision procedure was successful in significantly increasing Mr. Peters' range of motion in his knee.   However, Mr. Peters continues to take antibiotics and most likely will for the remainder of his life.

{¶7}   Mr. and Mrs. Peters filed a complaint for negligence, medical malpractice, and loss of consortium on December 12, 2017 against Akron General Medical Center, Dr. Pedersen, Akron Plastic Surgeons, LLC, and Dr. Parker (collectively "the Medical Defendants").   Mr. and Mrs. Peters allege that during the surgery on March 28, 2013, the Medical Defendants "negligently forgot or failed to remove a metal clamp from the thigh of [Mr.] Peters * * * [which] caused harms and losses, including infection, surgeries and other economic and non-economic damages."   Mr. and Mrs. Peters allege they did not discover the Medical Defendants' negligence until "subsequent treating doctors discovered that the surgical instrument did not belong in Mr. Peters' leg and needed to be surgically removed less than one year ago."

{¶8}   After conducting discovery, the Medical Defendants filed motions for summary judgment based upon Mr. and Mrs. Peters' claims being barred by the statute of limitations and the statute of repose.   Mr. and Mrs. Peters filed a brief in opposition and reply briefs were filed by the Medical Defendants.   The trial court granted summary judgment as to all counts in favor

of Akron General Medical Center, Akron Plastic Surgeons, L.L.C., Dr. Pedersen, and Dr. Parker based solely upon the statute of limitations.

{¶9} Mr. and Mrs. Peters have timely appealed this judgment entry, asserting two assignments of error.

II.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES BY FINDING APPELLANTS' MEDICAL MALPRACTICE CLAIM BARRED BY R.C. 2305.113(A).

{¶10} Mr. and Mrs. Peters assert that the trial court erred in granting summary judgment in favor of the Medical Defendants based upon their claims being barred by the statute of limitations. Specifically, Mr. and Mrs. Peters argue that the trial court erred when it only considered the date Mr. Peters learned that the clamp was in his leg and failed to consider when Mr. Peters learned that the clamp's presence was improper and harming him. We agree with Mr. and Mrs. Peters only as to their argument regarding the discovery of the clamp's presence being improper.

{¶11} This Court reviews an order granting summary judgment de novo. *See Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24, citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper under Civ.R. 56(C) when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶12} Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this burden, the nonmoving party has a "reciprocal burden" to "'set forth specific facts showing that there is a genuine issue for trial[.]'" *Id.* at 293, quoting Civ.R. 56(E). The non-moving party may not rest upon the mere allegations or denials in the pleadings, but must point to or submit evidence of the type specified in Civ.R. 56(C). *Dresher* at 293; Civ.R. 56(E).

{¶13} Summary judgment proceedings prohibit the trial court from weighing the evidence and limit the trial court to construing the evidence in the light most favorable to the nonmoving party. *Nationstar Mtge., LLC v. Waisanen*, 9th Dist. Lorain No. 16CA010904, 2017-Ohio-131, ¶ 8, citing *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, ¶ 9-10 (9th Dist.), quoting *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002). "A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor." *Waisanen* at ¶ 8, citing *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶14} Pursuant to R.C. 2305.113(A), "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." In a medical malpractice claim, the action accrues and the R.C. 2305.113(A) limitations period begins to run (1) "when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury," or (2) "when the physician-patient relationship for that condition terminates,

whichever occurs later." *Frysinger v. Leech*, 32 Ohio St.3d 38 (1987), paragraph one of the syllabus, explaining and modifying *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111 (1983), syllabus.[1] *Accord McGuire v. Milligan*, 9th Dist. Wayne No. 03CA0051, 2004-Ohio-2125, ¶ 7. Thus, it is a "discovery" or a "termination," whichever occurs later, that determines the accrual date in a medical malpractice claim. *Laidley v. St. Luke's Med. Ctr.*, 8th Dist. Cuyahoga No. 73553, 1999 WL 359194, *3 (June 3, 1999).

{¶15} Similarly, the "discovery" and "termination" analysis is also used to determine the accrual date and commencement of the statute of limitations in a medical malpractice action involving a foreign object. *See Spence v. Gohara*, 6th Dist. Lucas No. L-92-363, 1993 WL 323638, *2 (Aug. 27, 1993). In a foreign object medical malpractice claim, a claim must be commenced within one year from when the patient discovered the foreign object or one year from when the patient, exercising reasonable care and diligence, should have discovered the foreign object. R.C. 2305.113(D)(2). *See Melnyk v. Cleveland Clinic Found.*, 32 Ohio St.2d 198, 201 (1972) (The one year statute of limitations in a foreign object malpractice claim is triggered when the patient discovers, or should have discovered through the exercise of reasonable diligence, the negligent act of leaving a foreign object in the patient's body.).

{¶16} The Ohio Supreme Court set forth in *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1 (1987), and further clarified in *Allenius v. Thomas*, 42 Ohio St.3d 131 (1989), "an analysis to determine the accrual date for a medical malpractice claim, wherein the occurrence of a 'cognizable event' will trigger the running of the statute of limitations." *Akers v. Alonzo*, 65 Ohio St.3d 422, 425 (1992). A "cognizable event" is defined as "the occurrence of facts and

---

[1] Both *Oliver* and *Frysinger* cite to R.C. 2305.11(A), which is an earlier version of Ohio current's statute of limitations found at R.C. 2305.113(A). *See Oliver* at 117; *Frysinger* at paragraph one of the syllabus.

circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which [he or] she complains is related to a medical diagnosis, treatment, or procedure that the patient previously received." *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992), citing *Allenius* at syllabus. Additionally, "the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Allenius* at syllabus. The occurrence of a cognizable event is viewed under an objective standard. *Olszewski v. Blankfield*, 8th Dist. Cuyahoga No. 83172, 2004-Ohio-2564, ¶ 10.

{¶17} Upon the occurrence of the cognizable event, the patient has a "duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors." *Flowers* at syllabus. Thus, once a patient becomes aware of an injury, it is incumbent upon the patient to fully investigate his or her case. *Corcino v. Neurosurgical Servs., Inc.*, 9th Dist. Lorain No. 01CA007903, 2002 WL 462856, *2 (Mar. 27, 2002).

{¶18} Also relevant to the instant matter is the Ohio Supreme Court's holding in *Herr v. Robinson Mem. Hosp.*, 49 Ohio St.3d 6 (1990), that "[t]he cognizable-event analysis allows a patient to reasonably rely on his physician's assurances while placing a continuing duty on the medical profession to act with the requisite skill and care." *Id.* at 9-10. This Court has recognized that "[i]n Ohio a patient may trust the advice of their physician without having their subsequent legal remedies prejudiced[.]" *Christian v. McDonald*, 9th Dist. Lorain No. 98CA007240, 2000 WL 1026688, *2 (July 26, 2000). This position is based upon the fact that a patient, as a layperson, does not possess medical knowledge regarding the cause of medical complaints and the effects of medical treatment, and depends almost entirely upon the doctor's judgment and is bound to do so under the usual circumstances in each case. *Herr* at 9, quoting

*Bowers v. Santee*, 99 Ohio St. 361, 366 (1919). Therefore, in determining the cognizable event, the court must consider a patient's reasonable reliance upon the assurances from a treating physician who continues to treat the patient and is alleged to have committed the malpractice. *See Herr* at 9; *Christian* at \*3. Also relevant is a patient's reasonable reliance upon the assurances from concurrent and/or subsequent treating physicians against whom malpractice is not alleged. *See Rose v. Garza*, 3d Dist. Marion No. 9-04-17, 2004-Ohio-6960, ¶ 20-22; *Scott v. Rudy T.J. Lee, M.D., Inc.*, 11th Dist. Trumbull No. 96-T-5413, 1997 WL 360785, \*7-8 (June 6, 1997); *Leftwich v. Martelino*, 117 Ohio App.3d 405, 407, 411-413 (4th Dist.1997); *Sparks v. Blanchard Valley Hosp.*, 72 Ohio App.3d 830, 835 (3d Dist.1991). *See also Spence*, 1993 WL 323638, at \*2

{¶19} There is no dispute amongst the parties that Mr. and Mrs. Peters' negligence, medical malpractice, and loss of consortiums claims are all medical claims subject to a one year statute of limitations. *See* R.C. 2305.113(A), (E)(3) and (7). Nor is there a dispute that the medical claims in this case are premised upon a foreign object. Instead, the dispute centers on what was the cognizable event and when did it occur to trigger the statute of limitations in Mr. and Mrs. Peters' causes of action. Mr. and Mrs. Peters argue that the cognizable event was their discovery that the clamp's presence was improper and it was causing injury to Mr. Peters by way of infection and that this occurred on December 13, 2016 when Dr. Krebs removed the clamp from Mr. Peters' leg. The Medical Defendants assert that the cognizable event was Dr. Glass telling Mr. Peters that an x-ray showed a metal object, possibly a clamp, in his leg, which occurred on June 4, 2013. Alternatively, the Medical Defendants contend that August 15, 2013[2]

---

[2] The Medical Defendants assert this specific date based upon Mr. Peters' medical records which are not in the record.

is the accrual date for the statute of limitations because that is when Mr. Peters last treated with them.

{¶20} "Generally, the determination of when a cause of action accrues, and thereby triggers the statute of limitations, will involve a factual analysis." *McGuire*, 2004-Ohio-2125, at ¶ 7, citing *Shadler v. Purdy*, 64 Ohio App.3d 98, 103 (6th Dist.1989). Thus, we must examine the facts in this case to determine what was the cognizable event which did or should have led Mr. and Mrs. Peters to believe that the Medical Defendants were negligent in failing to remove a vascular clamp from his leg and when did that cognizable event occur. *See Hershberger*, 34 Ohio St.3d 1, at paragraph one of the syllabus.

{¶21} Mr. and Mrs. Peters assert that the trial court's decision was too narrow as it only considered the date that Mr. Peters learned that the clamp was in his leg. While Mr. and Mrs. Peters agree this date is relevant, they contend that the trial court failed to consider other pertinent facts, such as when Mr. Peters learned that the clamp was harming him and that the clamp's presence was improper. They argue that the determination of the cognizable event required the application of these facts. We will address both sets of facts separately.

### The injury

{¶22} Mr. and Mrs. Peters' argument that the cognizable event in this case is premised upon when they learned that the clamp was harming him is misplaced. This argument fails because they have misconstrued what constitutes the injury in a foreign object case.

{¶23} Mr. and Mrs. Peters contend that Mr. Peters' injury was the infection he experienced in 2016 as a result of the clamp being left in his leg. However, in a foreign object medical malpractice case the injury is the presence of the foreign object in the patient's body. *Doarn v. McAvoy*, 6th Dist. Lucas No. L-83-299, 1984 WL 4205, *2 (Jan. 20, 1984) ("The very

fact that a foreign object was left in [the patient's] body indicates an injury to [the patient] upon which he could claim damages for the negligence of [the medical professional].").  Thus, the patient discovers an injury in a foreign object case when the patient discovers the foreign object in his or her body.  *Lipovecs v. Eisenstat*, 8th Dist. Cuyahoga No. 51512, 1987 WL 5304, *4 (Jan. 8, 1987).  *See* R.C. 2305.112(D)(2) (The statute of limitations commences when the patient did or with reasonable care and diligence should have discovered the foreign object.).

{¶24}  Contrary to Mr. and Mrs. Peters' argument, the cognizable event in this case was not the discovery of harm alleged to be originating from the foreign object, but rather it was the discovery of the foreign object.  Accordingly, there was no error by the trial court when it did not consider the facts regarding when Mr. and Mrs. Peters learned that the clamp was causing him harm.

### The "foreign object"

{¶25}  Mr. and Mrs. Peters also argue that the trial court's cognizable event analysis failed to consider when they learned that the clamp's presence was improper.  Mr. and Mrs. Peters assert that while they discovered that an object, the clamp, was in Mr. Peters' leg in 2013, they did not discover that the clamp was a "foreign object" until Dr. Krebs removed it in December 2016, because they reasonably relied upon Dr. Glass that the clamp was not a problem.  The Medical Defendants' argument presumed that the clamp was a "foreign object" and, therefore, when Dr. Glass informed Mr. Peters on June 4, 2013 that there was a clamp in his leg, the cognizable event had occurred.

{¶26}  While the term "foreign object" is not defined under the statute, case law has defined "foreign object" as "an object that is not intentionally left in a patient for sound medical reasons."  *Vucsko v. Cleveland Urology Assocs., Inc.*, 8th Dist. Cuyahoga No. 107498, 2019-

Ohio-1992, ¶ 15, citing *Melnyk*, 32 Ohio St.2d at 200. *See Favor v. W.L. Gore Assocs., Inc.*, S.D.Ohio No. 2:13-cv-655, 2013 WL 4855196, *3 (Sept. 11, 2013), citing *Emery v. Dettling*, 9th Dist. Summit No. 8117, 1976 WL 188862, *1 (Aug. 4, 1976) ("[T]he exception carved out for a 'foreign object' left in a patient's body is intended to cover objects that should have been removed from the body, not to objects which are intentionally placed there as part of a medical procedure to which the patient consented."); *Lipovecs*, 1987 WL 5304, at *4.[3]

{¶27} Mr. and Mrs. Peters contend that the trial court did not consider the facts related to when they learned that the clamp was not intentionally left in his leg for a sound medical reason. Moreover, they assert the trial court did not consider the facts related to their reasonable reliance upon Dr. Glass regarding the clamp.

{¶28} The trial court focused solely on June 4, 2013 and concluded that "Mr. Peters knew on June 4, 2013 that there was a foreign object in his leg[.]" To support this conclusion, the trial court relied upon the fact that "Dr. Glass told [Mr. Peters] on that date that she did not know if there was a purpose for the placement of that clamp or not." The trial court also referenced Dr. Glass' deposition testimony "that she did not believe she placed that clamp in any previous surgery, she did not know of any purpose for the clamp to be in Mr. Peters' leg, and [she] opined that the clamp wasn't causing any harm."

{¶29} The trial court's reliance upon the foregoing facts to reach its conclusion as to the cognizable event is problematic for the following reasons. First, the evidence referenced by the trial court focused on Dr. Glass' thoughts and beliefs regarding the clamp, as opposed to what Dr. Glass actually communicated, either by words or actions, to Mr. Peters. Second, Dr. Glass'

---

[3] Based upon the responses to Mr. and Mrs. Peters' requests for admissions issued to the Medical Defendants, there is no dispute that the clamp left in Mr. Peters' leg was a foreign object as defined by the case law.

June 4, 2013 office note and the deposition testimony of Dr. Glass and Mr. Peters do not support the trial court's statement that "Dr. Glass told [Mr. Peters] on that date that she did not know if there was a purpose for the placement of that clamp or not."

{¶30}  We recognize that Dr. Glass testified that she "did not know if [the clamp] should be there or not."  However, this answer was in response to why she did not "believe" that the vascular clamp was causing any harm or trouble to Mr. Peters and does not support the trial court's statement that "Dr. Glass told" Mr. Peters such information on June 4, 2013.

{¶31}  The June 4, 2013 office note indicates that two x-rays of Mr. Peters' femur were taken that day and a "[v]ascular clamp was also noted."  Under the "PLAN" section, the office note states "Pts xrays were reviewed and discussed[.]"  As to what was discussed with Mr. Peters regarding the x-rays and the clamp at the June 4, 2013 office visit, Dr. Glass testified as follows:

> Q.  So can you tell us what you found and what you said to [Mr. Peters] about it?
>
> A.  Sure.  Per my recollection – at this point, I was seeing [Mr. Peters] with one of my partners quite frequently and there was something on the X-ray along the medial side of the leg up higher on the femur.  I did not know what it was.  It was a metallic something.  And I asked my partner, I said, what is this.  I did not know what it was.  We showed it to [Mr. Peters] and my partner said it might be a vascular clamp.  Showed him it was there and that was pretty much it at that time.  He –
>
> Q.  Okay.
>
> A.  That's what the course of that was.

Accordingly, the June 4, 2013 office note and Dr. Glass' testimony do not support the trial court's statement that "Dr. Glass told [Mr. Peters] on that date that she did not know if there was a purpose for the placement of that clamp or not."

{¶32} As to Mr. Peters' testimony, he did not recall when in 2013 that Dr. Glass discussed the clamp with him, nor did he recall the details of the discussion. However, he testified that his "takeaway" from the discussion was that Dr. Glass did not know why the clamp was there. Not knowing why the clamp was in Mr. Peters' leg is different than not knowing if there was a purpose for the placement of the clamp. Thus, Mr. Peters' testimony also does not support the trial court's statement and rationale for when Mr. and Mrs. Peters discovered the foreign object.

{¶33} Instead of construing the evidence in the light most favorable to Mr. and Mrs. Peters, the trial court appears to have disregarded this evidence and resolved competing inferences in favor of the moving parties regarding when Mr. and Mrs. Peters knew or should have known that the clamp was not intentionally left in Mr. Peters' leg for a sound medical purpose and therefore was a foreign object. Additionally, the trial court failed to apply the proper law in determining the cognizable event when it did not undertake any analysis regarding Mr. Peters' reliance upon Dr. Glass and whether his reliance was reasonable.

**Physician-patient relationship terminated**

{¶34} Lastly, the trial court's decision as to the statute of limitations issue was incomplete as it did not address when the physician-patient relationship between the Medical Defendants and Mr. Peters ended. As discussed above, in a medical malpractice claim, including foreign object cases, the action accrues and the statute of limitations period begins to run upon whichever occurs later, the discovery of the injury or the termination of the physician-patient relationship. *Frysinger*, 32 Ohio St.3d 38 at paragraph one of the syllabus, explaining and modifying *Oliver*, 5 Ohio St.3d 111 at syllabus. *See Spence*, 1993 WL 323638, at *2. Because the trial court failed to consider when the physician-patient relationship terminated, there is no

determination of whether the discovery or the termination occurred later. Without this determination, we are unable to review whether the trial court correctly decided the statute of limitations issue.

### Conclusion

**{¶35}** In light of the foregoing, the trial court erred in granting summary judgment to the Medical Defendants on all of the medical claims on the basis that the claims were barred by the statute of limitations. The first assignment of error is sustained.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES BY FINDING APPELLANTS' MEDICAL MALPRACTICE CLAIM BARRED BY R.C. 2305.113(C).

**{¶36}** Mr. and Mrs. Peters' second assignment of error asserts that the trial court erred when it granted summary judgment based upon the application of R.C. 2305.113(C), the statute of repose. This assignment of error is premature.

**{¶37}** Mr. and Mrs. Peters point out in their statement of the case that the trial court did not address the Medical Defendants' statute of repose argument. We agree. While the Medical Defendants moved for summary judgment based upon the statute of repose and the trial court set forth the law regarding the statute of repose in its decision, the trial court did not decide whether the statute of repose barred Mr. and Mrs. Peters' medical claims. Instead, the trial court solely decided that Mr. and Mrs. Peters' medical claims were barred by the statute of limitations. Despite the foregoing, Mr. and Mrs. Peters have assigned as error the trial court granting summary judgment based upon the statute of repose.

**{¶38}** In light of our resolution of the first assignment of error and because the trial court did not decide whether the statute of repose barred their claims, Mr. and Mrs. Peters' second assignment of error is premature.

### III.

**{¶39}** Mr. and Mrs. Peters' first assignment of error is sustained and their second assignment of error is premature. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DAVID F. RUDWALL, Attorney at Law, for Appellants.

ROBERT N. LANCASTER, JR., Attorney at Law, for Appellants.

ANDREW M. ENGEL, Attorney at Law, for Appellants.

BRIAN D. SULLIVAN and ERIN SIEBENHAR HESS, Attorneys at Law, for Appellees.

MARC W. GROEDEL, HOLLY MARIE WILSON and, AAREN R. HOST, Attorneys at Law, for Appellee.