[Cite as *Herrick v. Zaghlool*, 2022-Ohio-2994.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

SHAWN HERRICK,

    PLAINTIFF-APPELLANT,            CASE NO. 3-22-02

    v.

DAVID ZAGHLOOL, D.O., ET AL.,        O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Crawford County Common Pleas Court
Trial Court No. 19-CV-0081

Judgment Affirmed

Date of Decision: August 29, 2022

APPEARANCES:

    *Paul Flowers* for Appellant

    *Thomas A. Prislipsky* for Appellees

**ZIMMERMAN, P.J.**

{¶1} Plaintiff-appellant, Shawn Herrick ("Herrick"), appeals the judgment of the Crawford County Court of Common Pleas granting summary judgment in favor of defendants-appellees, David Zaghlool, D.O. (Dr. Zaghlool"), Avita Surgical Services, and Avita Health System (collectively "defendants"). For the reasons that follow, we affirm.

{¶2} This case stems from Herrick's allegation that Dr. Zaghlool improperly performed an excision of a lymph node on June 13, 2017, causing pain and other symptoms to his left arm and shoulder. Herrick had two post-operative appointments with Dr. Zaghlool—June 19 and 26, 2017—during which Herrick relayed to Dr. Zaghlool his worsening symptoms. According to Herrick, Dr. Zaghlool advised him that it would take "a month or two for [him] to get back to normal," prescribed him antibiotic medications and a pain medication, and discharged him from his care. (Herrick Depo. at 38). Importantly, after his final post-operative appointment with Dr. Zaghlool, Herrick was "worried" and began "question[ing]" whether "something had gone wrong during the surgery" since he "wasn't feeling any better." (*Id.* at 43).

{¶3} Nonetheless, after waiting for a couple of weeks, Herrick sought another appointment with Dr. Zaghlool since his symptoms continued to worsen.

However, the earliest that Herrick could be seen by Dr. Zaghlool was August 7, 2017. Because of his worsening pain, he was not able to wait for that appointment.

{¶4} Thus, Herrick pursued an appointment with his primary care provider and was seen by Charlie Davis, PA-C ("Davis") in his primary-care-provider's office on July 28, 2017. Based on Herrick's complaints of "unbearable" shoulder and neck pain and a collapsing trapezius muscle, Davis referred Herrick to Kyle Randall, M.D. ("Dr. Randall"), an orthopedic surgeon. (Herrick Depo. at 49). Significantly, Herrick testified that, "as soon as [he] took [his] shirt off" for Davis to examine him, Davis exclaimed that he "need[ed] to see an orthopedic surgeon and he made [him] the appointment." (*Id.* at 50).

{¶5} Dr. Randall saw Herrick on August 7 and 28, and September 6, 2017. Based on his examination of Herrick, Dr. Randall ordered a MRI, a MRI (with contrast), and an EMG. According to Herrick, Dr. Randall diagnosed him with scapula winging (because he could not raise his arm), a torn labrum, and a brachial-plexus injury. Thereafter, Dr. Randall provided him with an arm sling and referred him to pain management. However, Herrick testified that he terminated his physician-patient relationship with Dr. Randall after the September 6, 2017 appointment because, even though he could not "say for sure" that something went wrong during surgery, he was "fed up with the situation." (*Id.* at 54-55).

Specifically, he knew that his left arm and shoulder "wasn't right and it was becoming harder to live with." (*Id.* at 55).

{¶6} Nevertheless, because Herrick's discomfort continued, he consulted Steven Shook, M.D. ("Dr. Shook") of the Cleveland Clinic on November 16, 2017, who told Herrick that he sustained an injury to his spinal accessory nerve as a result of the surgery performed by Dr. Zaghlool. Consequently, Herrick notified the defendants on October 25, 2018 that he was considering bringing an action on a medical claim.

{¶7} Thereafter, on April 17, 2019, Herrick filed a complaint alleging medical negligence against the defendants. On May 7, 2019, the defendants filed their answer.

{¶8} On December 1, 2020, the defendants filed a motion for summary judgment, arguing that Herrick's medical-negligence complaint is barred by the statute of limitations applicable to medical claims. On December 23, 2020, Herrick filed a memorandum in opposition to the defendants' motion for summary judgment. On January 12, 2021, the defendants filed a reply in support of their motion for summary judgment.

{¶9} On January 7, 2022, the trial court granted the defendants' motion for summary judgment. (Doc. No. 28).

{¶10} Herrick filed his notice of appeal on January 31, 2022. He raises one assignment of error for our review.

## Assignment of Error

**The Trial Court erred in granting the Defendants' Motion for Summary Judgment since genuine issues of material fact existed demonstrating that Plaintiff Shawn Herrick's cause of action for his medical negligence claim, under Ohio Revised Code §2305.113, did not accrue and begin to run until he discovered his injury was related to Defendant's surgery on November 16, 2017.**

{¶11} In his assignment of error, Herrick argues that the trial court erred by granting summary judgment in favor of the defendants after concluding that his complaint was not timely. Specifically, the parties dispute the date from which the statute of limitations applicable to medical claims began to run based on the happening of a cognizable event which led, or should have led, Herrick to believe that his injury is related to the surgery performed by Dr. Zaghlool.

### Standard of Review

{¶12} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

*Analysis*

{¶13} Under R.C. 2305.113(A), "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." A "medical claim" is "any claim that is asserted in any civil action against a physician [or] hospital, [or] against any employee or agent of a physician [or] hospital, * * * and that arises out of the medical diagnosis, care, or treatment of any person.

{¶14} "A cause of action for medical malpractice accrues, and the one-year statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury or when the physician-patient relationship for that condition terminates, whichever occurs later." *Josolowitz v. Grant/Riverside Methodist Hosp. Corp.*, 10th Dist. Franklin No. 99AP-1462, 2000 WL 861836, *2 (June 29, 2000), citing *Frysinger v. Leech*, 32 Ohio St.3d 38 (1987), paragraph one of the syllabus. Importantly, "[t]he statute of limitations begins to run even if the plaintiff has not 'discovered all the relevant facts necessary to file a claim * * * .'" *Price v. United States*, S.D.Ohio No. 2:18-CV-949, 2020 WL 247186, *6 (Jan. 16, 2020), quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992).

{¶15} To determine when the statue of limitations begins to run,

the court must look to the facts of the case in order to find (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, (2) whether the injured party was aware, or should have been aware, that the condition was related

> to a specific medical service previously rendered him, and (3) whether the condition would put a reasonable person on notice of the need for further inquiry as to the cause of the condition.

*Tausch v. Riverview Health Inst.*, 187 Ohio App.3d 173, 2010-Ohio-502, ¶ 39 (2d Dist.), citing *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1 (1987). Nevertheless, when assessing "the injured party's awareness of the extent and seriousness of his condition, the court must find that a 'cognizable event' occurred that put the party on notice that his injury is related to a specific medical procedure and of the need to pursue his possible remedies." *Id.* at ¶ 40, citing *Allenius v. Thomas*, 42 Ohio St.3d 131 (1989). *See also Komsa v. Terveer*, 11th Dist. Lake No. 98-L-275, 2000 WL 522181, *3 (Mar. 31, 2000) (emphasizing that "a cognizable event puts the plaintiff on notice to conduct an investigation into the facts and circumstances relevant to his or her claim"), citing *Flowers* at 548.

> "*[C]onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations."

(Emphasis sic.) *Tausch* at ¶ 40, quoting *Flowers* at 549.

{¶16} "Having said this, there is one circumstance in which a 'cognizable event' will not necessarily trigger the statute of limitations." *Price* at *6. Specifically, "[w]hen the plaintiff's medical claim arises out of an ongoing physician-patient relationship, the statute of limitations does not begin to run until

after 'the physician-patient relationship for that condition terminates * * * .'" *Id.*, quoting *Frysinger* at paragraph one of the syllabus. "Importantly, the termination rule does not require that the relationship with the allegedly negligent doctor or hospital be severed entirely in order to suspend the statute of limitations." *Id.* "Rather, the statute of limitations begins to run as soon as the relationship for the particular *condition* terminates." (Emphasis sic.) *Id.*, citing *Frysinger* at paragraph one of the syllabus and *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385 (1988), paragraph one of the syllabus. "This makes sense because the termination rule is motivated by the twin policy goals of giving the alleged tortfeasor the opportunity to mitigate the patient's damages and alleviate the effects of his or her negligence and encouraging the parties to resolve their dispute short of litigation." *Id.*, citing *Frysinger* at 41 and *Ram v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 80447, 2002-Ohio-3644, ¶ 24. "Once treatment for a particular condition has concluded, the opportunity to mitigate has passed, and it makes less sense to continue to suspend the statute of limitations, even if the medical relationship remains intact." *Id.*

{¶17} Nevertheless, "[t]he cognizable-event analysis allows a patient to reasonably rely on his physician's assurances while placing a continuing duty on the medical profession to act with the requisite skill and care." *Herr v. Robinson Mem. Hosp.*, 49 Ohio St.3d 6, 9-10 (1990). "This position is based upon the fact

that a patient, as a layperson, does not possess medical knowledge regarding the cause of medical complaints and the effects of medical treatment, and depends almost entirely upon the doctor's judgment and is bound to do so under the usual circumstances in each case." *Peters v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 29479, 2020-Ohio-369, ¶ 18. "Therefore, in determining the cognizable event, the court must consider a patient's reasonable reliance upon the assurances from a treating physician who continues to treat the patient and is alleged to have committed the malpractice." *Id.* The court may also consider a patient's reasonable reliance on the assurances from a concurrent- or subsequent-treating physician against whom malpractice is not alleged. *Id. See also Rose v. Garza*, 3d Dist. Marion No. 9-04-17, 2004-Ohio-6960, ¶ 20-22.

**{¶18}** Here, the trial court did not err by granting summary judgment in favor of the defendants because there is no genuine issue of material fact that Herrick's complaint against the defendants is time barred by the statute of limitations under R.C. 2305.113(A). Importantly, Herrick did not file his complaint against the defendants within one-year of when he discovered, or in the exercise of reasonable care and diligence should have discovered, his injury, and no exception extending the statute of limitations applies.

**{¶19}** In this case, the parties dispute the date on which Herrick's medical claim accrued for the condition about which he now complains. Herrick contends

that a cognizable event occurred on November 16, 2017 when Dr. Shook diagnosed him with a spinal-accessory-nerve injury, which Dr. Shook concluded occurred during the course of the surgery performed by Dr. Zaghlool. On the contrary, the defendants contend that a cognizable event occurred on July 28, 2017, the date on which Herrick sought treatment from his primary care provider relative to his surgical complications. As a third suggestion, the trial court concluded that a cognizable event occurred on September 6, 2017—a date by which "Herrick had seen multiple doctors in addition to Dr. Zaghlool;" "[t]he two-month healing period had expired;" "Herrick was experiencing severe pain in the same area where the surgery had taken place;" "[h]e had underwent two (2) separate MRIs and an EMG;" and "[h]e testified that he knew that there was something wrong and that he suspected it had something to do with his surgery." (Doc. No. 28).

{¶20} Even if we construe the evidence and make all inferences in Herrick's favor (as we are required to do), we conclude that (based on the specific facts and circumstances of this case) there is no genuine issue of material fact that the statute of limitations began to run (at the *latest*) on September 6, 2017. *See Hans v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 07AP-10, 2007-Ohio-3294, ¶ 29 (concluding that, "even using the latest date," "appellant failed to timely file the present cause of action"). Importantly, Herrick testified that he was "worried" and began "question[ing]" whether "something had gone wrong during the surgery"

since he "wasn't feeling any better" after his final post-operative appointment with Dr. Zaghlool. (Herrick Depo. at 43). *Compare Komsa*, 2000 WL 522181, at *3 (noting "appellant stated that during his treatment with Dr. Terveer that he was 'wondering' about his 'whole dental treatment' when assessing when a cognizable event occurred").

**{¶21}** Further, Herrick testified that he suspected something went wrong during surgery because he knew that his left arm and shoulder were not "right and it was becoming harder to live with" by the conclusion of his September 6, 2017 appointment with Dr. Randall. (Herrick Depo. at 55). Indeed, by September 6, 2017, Herrick had sought treatment with two other medical providers because he was experiencing "unbearable" pain and could see that his trapezius muscle was collapsing. (*Id.* at 49). *Compare Patterson v. Janis*, 10th Dist. Franklin No. 07AP-347, 2007-Ohio-6860, ¶ 20 (concluding "that plaintiff's continued pain after the surgery performed by Dr. Janis, which ultimately caused her to seek treatment with a different doctor, combined with plaintiff first learning after the surgery that a metallic device had been implanted in her foot, which was contrary to her understanding of what the surgery would entail, should have placed plaintiff on notice of the need to investigate possible impropriety and to pursue any available remedies").

**{¶22}** Thereafter, Herrick contends that this court should consider his reliance on Dr. Zaghlool's, Davis's, and Dr. Randall's assurances (or lack of a affirmative diagnosis) indicating that his injury was related to something other than his surgery when assessing when the cognizable event occurred. Herrick's argument is misplaced and is distinguishable from a situation under which a patient reasonably relied on the assurances from a treating physician (against whom malpractice is alleged) or a concurrent- or subsequent-treating physician (against whom malpractice is not alleged). Significantly, regardless of the reason, Herrick sought medical care from subsequent-treating physicians notwithstanding Dr. Zaghlool's assurances—that is, Herrick never returned to Dr. Zaghlool despite his assurances that it would take "a month or two for [him] to get back to normal." (Herrick Depo. at 38). Moreover, there is no contention in the record before us suggesting that Herrick's lymph-node-excision surgery was ineffective or that an intervening injury or event occurred which would have caused Herrick's symptomatology. *Compare Rose* at ¶ 21 ("Holding that appellant should have known, despite two doctors' opinions to the contrary, that her pregnancy was the result of a sterilization *improperly* performed rather than an *ineffective* sterilization, would mean holding appellant to a higher degree of medical knowledge than the physicians with whom she consulted.").

**{¶23}** Instead, the facts of this case reflect that *by* September 6, 2017 Herrick was "aware of facts that would have alerted a reasonable person to investigate the appropriateness of the surgery performed by Dr. [Zaghlool], and to pursue possible remedies for any injury sustained as a result of any impropriety." *Patterson* at ¶ 20. That is, Herrick's continued pain and visible musculature changes following the surgery performed by Dr. Zaghlool—that continued to persist outside the normal healing time described by Dr. Zaghlool and which ultimately caused him to seek treatment with different physicians—should have placed him on notice of the need to investigate possible impropriety and to pursue his possible remedies. *Accord id. Compare George v. Univ. of Toledo Med. Ctr.*, 10th Dist. Franklin No. 17AP-559, 2018-Ohio-719, ¶ 18 ("Given his ongoing symptoms, coupled with what Dr. Gobezie told George during his first visit on September 16, 2014, a reasonable jury could only conclude that this visit was the cognizable event that triggered the commencement of the statute of limitations period. It was unnecessary for George to know the full extent of his injury or its specific cause to trigger the commencement of the statute of limitations.").

**{¶24}** Yet, Herrick argues that "the knowledge of an injury or complication *alone* is not enough to initiate the statute of limitations as a matter of law * * * ." (Emphasis added.) (Appellant's Reply Brief at 7). However, "[a] plaintiff need not be aware of the full extent of his or her injury to trigger the statute of limitations."

*Asai v. Obstetrics & Gynecology Assoc., Inc.*, 12th Dist. Butler No. CA2020-02-018, 2020-Ohio-4350, ¶ 17, citing *Schmitz v. NCAA*, 155 Ohio St.3d 389, 2018-Ohio-4391, ¶ 22. Consequently, that Herrick did not receive his spinal-accessory-nerve diagnosis and its corresponding nexus with the surgery performed by Dr. Zaghlool until November 16, 2017 does not change the outcome of this case. *See George* at ¶ 18. In other words, even though Herrick did not know the *exact* diagnosis of his injury, he was aware (or should have been aware) of the extent and seriousness of his condition, putting him on notice that his injury was related to the surgery and that he needed to pursue his possible remedies. *Compare Komsa*, 2000 WL 522181, at *3 ("Appellant's claim that he had no idea of what the resulting injury would be from his condition until he met with Dr. Rosenberg on July 10, 1996, unfortunately runs contrary to the law in Ohio. Although appellant may not have known that his condition would require gum surgery and retroactive care until meeting with Dr. Rosenberg, the *Flowers* decision shows that a person who knows that he has a certain condition has the duty to inquire into the cause and facts of such situation.").

{¶25} Based on this evidence, and when viewing the evidence in favor of Herrick, we conclude that a reasonable jury could only conclude that the cognizable event triggering the commencement of the one-year statute of limitations under R.C. 2305.113(A) occurred (at the latest) on September 6, 2017. *Accord George* at ¶ 18;

*Patterson* at ¶ 22. Accordingly, the one-year statute of limitations would have expired on September 6, 2018. Therefore, Herrick was required to commence his medical-negligence action on or before September 6, 2018.

**{¶26}** Because Herrick filed his complaint on April 17, 2019, we must determine if the statute of limitations was extended. "R.C. 2305.113(B) (formerly R.C. 2305.11(B)) 'provides an exception to [R.C. 2305.113(A)] by affording litigants the opportunity to extend the one-year statute of limitations for an additional one hundred eighty days from the time proper notice is given to potential defendants.'" *Szwarga v. Riverside Methodist Hosp.*, 10th Dist. Franklin No. 13AP-648, 2014-Ohio-4943, ¶ 8, quoting *Marshall v. Ortega*, 87 Ohio St.3d 522, 523 (2000). R.C. 2305.113(B)(1) provides:

> If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical * * * claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

To extend the one-year statute of limitations, the 180-day letter must comport with the requirements of R.C. 2305.113(B)(1)—that is, the letter must be received within the one-year period described in R.C. 2305.113(A) and must state that the claimant is considering bringing a malpractice action against the recipient. *Szwarga* at ¶ 10, citing *Marshall* at 525-526.

-15-

**{¶27}** In this case, Herrick notified the defendants on October 25, 2018 that he was considering bringing an action on a medical claim. In other words, Herrick's notice was not a 180-day letter that extended the statute of limitations beyond September 6, 2018 because Herrick did not provide it to the defendants within the one-year period set forth in R.C. 2305.113(A). Consequently, because Herrick's letter did not extend the statute of limitations, Herrick's complaint filed on April 17, 2019 was untimely.

**{¶28}** Therefore, because Herrick failed to timely file his suit against defendants, summary judgment in favor of defendants was appropriate.

**{¶29}** Herrick's assignment of error is overruled.

**{¶30}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**