[Cite as *Sullivan v. Mercy Health*, 2022-Ohio-4445.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |  |
|---|---|---|---|
| MICHELLE SULLIVAN, et al., | : | | |
| Appellants, | : | | CASE NO. CA2022-02-023 |
| | : | | O P I N I O N |
| - vs - | | | 12/12/2022 |
| | : | | |
| MERCY HEALTH, et al., | : | | |
| Appellees. | : | | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2018 03 0493


Marlene Penny Manes, for appellants.

Rendigs, Fry, Kiely & Dennis, LLP, and C. Jessica Pratt, for appellees.


**PIPER, P.J.**

{¶1}     Appellants, Michelle Sullivan and her husband Christopher Sullivan, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of Mercy Healthcare f/k/a Catholic Health Partners, Mercy Health-Fairfield Hospital, L.L.C. d/b/a Mercy Hospital Fairfield ("Hospital").

{¶2}     Michelle went to the Hospital emergency room on March 2, 2014, for abdominal pain and a possible urinary tract infection.   She was accompanied by

Christopher. While in the emergency room, Michelle was evaluated by a physician assistant, Jamilyn Bryant, who was supervised by Dr. Kenneth Koster. P.A. Bryant ordered Zofran to be administered for nausea and Dilaudid to be administered for pain.

{¶3} The Sullivans alleged that they informed those in the emergency intake process, and other professionals involved in Michelle's care, that she was allergic to Zofran and it should not be administered to her. They further claimed that Hospital personnel were advised by them that the Mercy computer system contained information from a previous emergency room visit two years earlier that would substantiate that she had a prior allergic reaction to Zofran. The Sullivans alleged that despite their instructions, the Zofran medication was administered by a Hospital nurse.

{¶4} The record reflects that Michelle was admitted to the hospital for further evaluation of her abdominal pain. We note there is conflicting evidence as to when Michelle first began exhibiting symptoms of an adverse reaction. Michelle stated that she noticed hives on her skin almost immediately after the medication was administered while she was still in the emergency department. The Hospital argues that Michelle did not mention any symptoms of an adverse reaction until hours later after she had been transferred out of the emergency room and into an inpatient room.

{¶5} Based upon her symptoms, a floor nurse called for a hospitalist to see Michelle. Dr. Kelechi Okoli provided care through the night on March 2, 2014. Dr. Okoli attributed her situation to a severe allergic reaction to Zofran based upon the observed symptoms and Michelle's report of an allergy to Zofran. Treatment for the adverse reaction continued through at least March 4, 2014, when Michelle's patient record indicate that her symptoms were resolving. Michelle was discharged from the hospital on March 6, 2014.

{¶6} The Sullivans initiated this action on August 26, 2015 asserting malpractice claims against the Hospital, Dr. Koster, P.A. Bryant, their professional corporations, Mercy

Emergency Physicians, L.L.C., Fairfield Hospitalists, L.L.C/Premier Health Care Services, L.L.C., John and Jane Does, and a subrogated plaintiff.

{¶7} In their complaint, the Sullivans alleged various failures in the standard of care rendered by the Hospital and the medical professionals in administering Zofran to Michelle in its emergency department on March 2, 2014. The Sullivans alleged that Michelle suffered a severe anaphylactic reaction that required life-sustaining, critical care, and that the additional Hospital services resulted in damages. The Sullivans' stated causes of action included lack of informed consent, negligence, trespass, and battery. The complaint included Christopher's claim for emotional distress, and his derivative claims. The complaint further alleged that Michelle was in a hospital-patient treatment relationship from the time of the "event," March 2, 2014, until March 6, 2014, when she was released from the Hospital. The Sullivans served the named defendants with 180-day letters on March 3, 2015.

{¶8} The named defendants filed motions for summary judgment claiming the Sullivans were out of time by one day, based on the statute of limitations. The Sullivans opposed the motions, arguing the date for determining the statute of limitations was the date of termination of the hospital-patient relationship, March 6, 2014, not March 2, 2014. On September 9, 2020, the magistrate denied the defendants' motions for summary judgment. The entry stated:

> the Court finds that there are questions of material fact as to whether the cognizable event giving rise to Plaintiffs' medical claim(s) were extended into March 3, 2014. If so, Plaintiffs' 180-day letters were timely and the applicable statute of limitations was met.

{¶9} One day prior to the magistrate's decision, this court issued our decision in *Asai v. Obstetrics & Gynecology Assocs.*, 12th Dist. Butler No. CA2020-02-018, 2020-Ohio-

4350.[1]  Based upon their counsel's interpretation, the defendants, including the Hospital, re-filed their motions for summary judgment.

{¶10}  On August 27, 2021, the magistrate partially granted the Hospital's renewed summary judgment motion as to the Hospital, stating:

> The Court previously denied Defendants' motions for summary judgment raising statute of limitations defenses, finding genuine issues of material fact remained concerning the date of the cognizable event giving rise to Plaintiffs' medical claims.  In light of the record and the 12th District Court of Appeals' holding in *Asai v. Obstetrics & Gynecology Associates, Inc.*, 2020-Ohio-4350, 2020 WL 5361179, the Court now holds that the statute of limitations for medical claims in this matter began to run on March 2, 2014, the date of the cognizable event, when Plaintiffs formed a belief that Michelle received improper medical treatment, and the date Michelle's relationship with Defendants [Dr.] Koster and [P.A.] Bryant terminated.

{¶11}  Because both Dr. Koster and P.A. Bryant admitted during discovery that they traveled outside of Ohio for at least one day for non-business reasons between March 2, 2014, and March 3, 2015, the magistrate found that time was tolled for at least one day.  Therefore, the Sullivans' 180-day letters were timely filed, and the matter was to proceed to trial on the claims against Dr. Koster and P.A. Bryant.  Because there was no such tolling for the Hospital defendants, the magistrate found that the 180-day letter was untimely.  The trial court stated that the cognizable event occurred on March 2, 2014, the same date it said that Michelle terminated her relationship with Dr. Koster and P.A. Bryant.

{¶12}  The Hospital filed motions in limine to prohibit the Sullivans from asserting or arguing direct or independent negligence against the Hospital and its corporate defendants.  The magistrate granted the Hospital's motions in limine.

{¶13}  The trial court held a pretrial hearing on January 12, 2022.  The trial court

---

1. The supreme court subsequently declined jurisdiction.  *Asai v. Obstetrics & Gynecology Assocs.*, 160 Ohio St.3d 1507, 2020-Ohio-6835.

stated that it concurred with the magistrate's decision that this court's decision in *Asai* controlled. As a result, the case proceeded to a jury trial against Dr. Koster and P.A. Bryant. The trial court specifically instructed the jurors to not make any findings with regard to the Hospital. On January 26, 2022, the jury returned verdicts in favor of Dr. Koster and P.A. Bryant.

{¶14} On January 27, 2022, the trial court entered its final judgment entry. The Sullivans filed a timely notice of appeal based upon the trial court's interpretation of the applicable date for statute of limitations purposes, and its determination that this court's decision in *Asai* was controlling. The Sullivans have raised two assignments of error which are interrelated:

{¶15} Assignment of Error No. 1:

{¶16} THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT TO THE HOSPITAL, AND ITS CORPORATE ENTITIES, BASING ITS DECISION ON A MISINTERPRETATION/MISPLACED APPLICATION OF THIS APPELLATE COURT'S HOLDING IN *ASAI V. OBSTETRICS & GYNECOLOGY ASSOCIATES, INC.*, 2020-OHIO-4350.

{¶17} Assignment of Error No. 2:

{¶18} IN ITS CONTINUOUS HOLDINGS AS TO THE APPLICATION OF *ASAI V. OBSTETRICS & GYNECOLOGY ASSOCIATES, INC.*, 2020-OHIO-4350, THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE APPELLANTS THEIR RIGHT TO PURSUE THEIR DIRECT AND INDEPENDENT LIABILITY CLAIMS AGAINST THE HOSPITAL AND ITS CORPORATE ENTITIES/OWNERS.

{¶19} The Sullivans argue in their first and second assignments of error that the trial court erred in granting summary judgment in favor of the Hospital.

**Summary Judgment**

{¶20} This court reviews summary judgment decisions de novo. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law and, (3) all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 369-70 (1998).

{¶21} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Robinson v. Cameron*, 12th Dist. Butler No. CA2014-09-191, 2015-Ohio-1486, ¶ 9. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Avila v. Hughes*, 12th Dist. Warren No. CA2020-08-047, 2021-Ohio-2463, ¶ 34.

### Medical Malpractice

{¶22} R.C. 2305.113(A) provides that a claim for medical malpractice must be brought within one year "after the cause of action accrued." R.C. 2305.113(B)(1) provides,

> if prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

According to the Ohio Supreme Court, written notice for purposes of the 180-day letter will be deemed to have been given when received. *Edens v. Barberton Area Family Practice Ctr.*, 43 Ohio St.3d 176, 180 (1989).

- 6 -

{¶23} A cause of action for medical malpractice accrues either "(1) when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (2) when the physician-patient relationship terminates, whichever occurs later." *Akers v. Alonzo*, 65 Ohio St. 3d 422, 424-25 (1992). Therefore, the accrual date for a medical claim is determined by "termination" or "discovery," whichever occurs later. *Dobrovich v. Kaiser Permanente*, 8th Dist. Cuyahoga No. 84819, 2005-Ohio-2444, ¶ 9.

### Trial Court

{¶24} The trial court granted summary judgment after concluding that the Sullivans failed to timely serve a 180-day letter on the Hospital. The trial court found that the statute of limitations for medical claims began to run on March 2, 2014, when Michelle formed a belief that she had received improper medical treatment, and the date it said Michelle's relationship with the emergency room personnel, Dr. Koster and P.A. Bryant, terminated. The trial court did not address the claims that Michelle had further treatment resulting from the adverse reaction in the days thereafter until her discharge from the Hospital on March 6, 2014.

{¶25} Since the Sullivans served the 180-day letters on March 3, 2015, allegedly one day late, the trial court determined that the direct claims of medical negligence against the Hospital were therefore time-barred. The trial court stated that this result was in line with this court's decision in *Asai v. Obstetrics & Gynecology Assocs.*, 12th Dist. Butler No. CA2020-02-018, 2020-Ohio-4350.

### *Asai v. Obstetrics & Gynecology Assocs.*

{¶26} *Asai* also involved a claim of medical malpractice. On March 2, 2016, the plaintiff went to Mercy Fairfield Hospital and was admitted to the labor and delivery department by Dr. Swayze. *Id.* at ¶ 2. The plaintiff's labor lasted into the next day, and Dr. Swayze performed an emergency cesarean delivery on March 3, 2016. The plaintiff began

hemorrhaging blood and Dr. Swayze performed an emergency hysterectomy the same day. The plaintiff was then taken to the intensive care unit for further care and observation. *Id.*

{¶27} Also on March 3, 2016, Dr. Kahan, an anesthesiologist, attempted to place an arterial line in the plaintiff's left arm, but had difficulties finding an appropriate vein. *Id.* at ¶ 3. The plaintiff developed compartment syndrome in her arm and was returned to the operating room so that a different doctor could surgically address the compartment syndrome. The plaintiff remained hospitalized until March 7, 2016 but was discharged and transferred care to the University of Cincinnati Hospital for treatment of her compartment syndrome and a wound on her left arm that resulted from her treatment and surgery. *Id.*

{¶28} On March 10, 2016, the plaintiff returned to the emergency department of Mercy Fairfield Hospital. *Id.* at ¶ 4. The plaintiff was diagnosed and treated for pneumonia and was released the same date. Neither Dr. Swayze, nor Dr. Kahan, were consulted or treated the plaintiff on March 10 during her time in the emergency room. *Id.*

{¶29} The plaintiff brought her claim for medical malpractice against multiple defendants, including Dr. Swayze and her employer, Dr. Kahan and his employer, and Mercy Fairfield. *Id.* at ¶ 5. Within her complaint, the plaintiff acknowledged that March 3, 2016, was the date that her surgeries and complications occurred. The plaintiff did not challenge the trial court's finding that the cognizable event was March 3, 2016. *Id.* at ¶ 20. As such, the defendants needed to receive the 180-day letter by March 3, 2017, and the record was undisputed that they did not. *Id.*

{¶30} On appeal, the plaintiff claimed that she terminated her relationship with the providers on March 10, 2016 when she went to the emergency room a second time and was diagnosed with pneumonia. *Id.* at ¶ 19. Therefore, she claimed that the later date should be used to calculate the statute of limitations. *Id.* This court overruled the plaintiff's assignment of error and affirmed the trial court's decision because her relationship did not

terminate on the later date. *Id.* at ¶ 20. When the plaintiff went to the emergency room on March 10, she did not receive care related to her complications involved in the medical malpractice claim. *Id.* at ¶ 19. She was diagnosed with pneumonia and sent home that day and received no care for any labor-related issues. *Id.*

**Analysis**

**{¶31}** Upon review of the record and construing the evidence in favor of the nonmoving party, we find the trial court erred in granting summary judgment in favor of the Hospital based upon its reading of this court's decision in *Asai*. While *Asai* was correctly decided, and remains good law, it was not an appropriate basis to grant summary judgment in favor of the Hospital in this case.

**{¶32}** The trial court's decision placed undue emphasis on this court's decision in *Asai* finding that the statute of limitations began to run on March 2, 2014. The plaintiff in *Asai* acquiesced in the timing of the cognizable event as March 3, 2016. Instead, plaintiff attempted to claim that a subsequent, unrelated visit to the emergency room on March 10, 2016, should extend the date she terminated her relationship with the medical providers relevant to the cognizable event of March 3, 2016. *Id.* at ¶ 19. We concluded that the plaintiff's argument was without merit because she did not receive any care connected with her delivery or hysterectomy during that subsequent, unrelated visit. *Id.* at ¶ 20. In other words, her second trip to the hospital had nothing to do with her alleged medical malpractice claims relating to her delivery and hysterectomy. *Id.* The plaintiff in Asai never argued that the termination date was extended due to the period of time she was treated by the hospital from March 4, 2016 through March 7, 2016, presumably because it was of no benefit.

**{¶33}** Additionally, in *Asai* we specifically noted that the plaintiff could not demonstrate that she looked to the hospital, as opposed to her obstetrician (Dr. Swayze), for her medical care. *Id.* at ¶ 25. The plaintiff there had a pre-existing physician-relationship

with Dr. Swayze over the course of the prior nine months and had seen the doctor on numerous occasions in his private offices. The plaintiff had a coordinated plan for her labor and delivery and sought the doctor's care when she began to exhibit signs of labor. *Id.* To the contrary, in this case, Michelle averred that she did not seek a specific physician and none of the personnel assigned to her were previously known to her nor in any way selected. *See Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435 (1994) (standard for establishing liability when a hospital holds itself out to the public as a provider of medical services).

{¶34} This case involves a different set of facts in which a cognizable event does not trigger the statute of limitations. As noted above, a medical malpractice action accrues at the point of discovery or upon termination of the relationship, also described as the "termination rule." The termination rule, in effect, delays the running of the statute of limitations for purposes of making a medical malpractice complaint. *Akers*, 65 Ohio St.3d at 424-425; *Herrick v. Zaghlool*, 3d Dist. Crawford No. 3-22-02, 2022-Ohio-2994, ¶ 16. Specifically, the statute of limitations does not begin to run until "the physician-patient relationship for that condition terminates." *Frysinger v. Leech*, 32 Ohio St.3d 38 (1987), paragraph one of the syllabus. "Rather, the statute of limitations begins to run as soon as the relationship for the particular condition terminates." *Herrick* at ¶ 16.

{¶35} "This position is based upon the fact that a patient, as a layperson, does not possess medical knowledge regarding the cause of medical complaints and the effects of medical treatment, and depends almost entirely upon the doctor's judgment and is bound to do so under the usual circumstances in each case." *Peters v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 29479, 2020-Ohio-369, ¶ 18; *Theobald v. Univ. of Cincinnati*, 10th Dist. Franklin No. 09AP-269, 2009-Ohio-5204, ¶ 13 (The purpose for the termination rule is that it strengthens the physician-patient relationship).

**{¶36}** "Therefore, in determining the cognizable event, the court must consider a patient's reasonable reliance upon the assurances from a treating physician who continues to treat the patient and is alleged to have committed the malpractice." *Peters* at ¶ 18. The court may also consider a patient's reasonable reliance on the assurances from a *concurrent-or subsequent-treating physician against whom malpractice is not alleged*. *Id.* (Emphasis added.); *Tausch v. Riverview Health Inst., L.L.C.*, 2d Dist. Montgomery No. 22921, 2010-Ohio-502, ¶ 36-38; *Amadsu v. O'Neal*, 1st Dist. Hamilton No. C-070418, 2008-Ohio-1730, ¶ 13.

**{¶37}** In this case, Michelle sought treatment from the Hospital emergency department on March 2, 2014, for abdominal pain and a possible urinary tract infection. In connection with that visit, medical personnel ordered the administration of Zofran. According to the summary judgment evidence, Michelle stated that she told multiple individuals that she was allergic to that drug and was unwilling to take it. Despite this, Michelle stated that the drug was administered, and she developed complications as a result. Michelle was then treated for these complications over the next days until she was discharged on March 6.

**{¶38}** Although Michelle never received any care from Dr. Koster or P.A. Bryant after she left the emergency room, Michelle continued to receive care from Dr. Okoli for an adverse reaction allegedly caused in the emergency room. Michelle remained in the same hospital and received care from subsequent medical professionals against whom Michelle does not claim committed malpractice. The statute of limitations therefore began to run as soon as the relationship for the particular condition terminated and not when Michelle was transferred into an inpatient room. *Herrick*, 2022-Ohio-2994 at ¶ 16; *Ram v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 80447, 2002-Ohio-3644. There is no dispute that the Zofran was administered in the emergency room, which led to the complications that

Michelle complains of. Therefore, the Sullivans 180-day letter was timely served on the Hospital on May 3. Unlike *Asai*, the Sullivans are not attempting to expand the statute of limitations based upon a subsequent, unrelated trip to the hospital. Michelle received continuing and ongoing care until March 6 when she was discharged. Accordingly, we find the Sullivans' two assignments of error have merit and are therefore sustained.

{¶39} We note the Hospital argues that this court should have dismissed this appeal based upon the prior adjudication involving Dr. Koster and P.A. Bryant. We decline the invitation to find this issue moot. The trial court's decision was based upon a misapplication of this court's decision in *Asai* that should be clarified. Furthermore, the Sullivans have raised additional claims against other parties. Considering the record, we find it would be inappropriate to terminate these proceedings at this time, as any further findings are better addressed on remand.

{¶40} Judgment reversed and remanded.

HENDRICKSON and BYRNE, JJ., concur.