[Cite as *Tsonis v. Anesthesiology Servs. Network, Ltd.*, 2025-Ohio-5164.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| ISIDORA TSONIS ET AL. | : | |
| | : | C.A. No. 30345 |
| Appellants | : | |
| | : | Trial Court Case No. 2024 CV 00907 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| ANESTHESIOLOGY SERVICES | : | Court) |
| NETWORK LTD. ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellees | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on November 14, 2025, the judgments of the trial court are reversed and remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and HUFFMAN, J., concur.

OPINION

PATRICK K. ADKINSON, Attorney for Appellants
BILL J. PALIOBEIS, Attorney for Appellees Anesthesiology Network Services Ltd., Edward
Jones, and Bradley Besson
JAREN A. HARDESTY, Attorney for Appellee Miami Valley Hospital

EPLEY, P.J.

{¶ 1} Isidora Tsonis, her husband, and children appeal from judgments of the Montgomery County Court of Common Pleas, which granted summary judgment to Dr. Bradley Besson, Edward Jones, Anesthesiology Services Network, Ltd. ("ASN"), and Miami Valley Hospital ("MVH") on Tsonis's medical claims and her family's derivative loss of consortium claims. They challenge the trial court's determination that their action was not timely filed and its failure to allow discovery on that issue. For the following reasons, the trial court's judgments are reversed, and this matter is remanded for further proceedings.

## I. Facts and Procedural History

{¶ 2} On July 20, 2021, Tsonis went to MVH for an electrophysiology study, a cardiology procedure requiring general anesthesia with intubation. Jones, a certified registered nurse anesthetist, provided anesthetic services for the procedure. According to Tsonis's complaint, Jones negligently inserted the endotracheal tube in the esophagus (pathway to the stomach) rather than the trachea (airway) and failed to recognize the error for approximately 15 to 20 minutes, resulting in a brain injury. Dr. Besson, an anesthesiologist, allegedly failed to properly supervise Jones. Both Jones and Besson were employed by ASN.

{¶ 3} Due to the complication with the anesthesia, Tsonis became comatose, the electrophysiology study was cancelled, and Tsonis was transferred to the intensive care unit

2

where she received mechanical ventilatory support. Initially, her prognosis was guarded, and her condition listed as critical. The next day, Tsonis awoke and was extubated, but she continued to show encephalopathy and demonstrated memory loss. By July 23, 2021, Tsonis's condition was stable, and she was discharged to her home. Tsonis has no memory of her hospitalization, and her memories of the following weeks are "very jumbled, disjointed and difficult to keep straight."

{¶ 4} According to evidence submitted by MVH, on July 26, 2021, Tsonis went to the emergency department, complaining of a migraine and blurred vision. She told a triage nurse that she had been in the ICU after "they messed up my intubation."

{¶ 5} On August 19, 2021, Tsonis had a telephone call with Dr. Besson, which lasted more than an hour. Tsonis has some memory of this conversation.

{¶ 6} On July 2, 2022, counsel for Tsonis mailed more than forty 180-day letters to medical providers (notices of intent to file a medical malpractice suit) by certified mail, return receipt requested. These included three letters to Besson, three letters to Jones, two letters to ASN, and two letters to MVH. Two of the three letters to Besson and Jones, respectively, were mailed to 1 Wyoming Street in Dayton, the physical address of MVH, with one letter stating "in care of MVH," and the other in care of ASN. The third set of letters to Besson and Jones was mailed in care of ASN's statutory agent in Columbus, Ohio. ASN's letters were mailed to the hospital address and to its statutory agent. The letters for MVH were sent to an address on North Main Street and to the hospital address.

{¶ 7} ASN received a letter on July 15, 2022. The letters to Besson and Jones sent to the hospital address were signed for on July 28, 2022. The Premier Health General Counsel's Office received the letters addressed to MVH on July 27 and July 28, 2022.

3

**{¶ 8}** On January 10, 2023, Tsonis and her husband, Dean Margioras, filed suit against MVH, ASN, Besson, Jones, and four others based on medical negligence and vicarious liability. *Tsonis v. Miami Valley Hosp.*, Montgomery C.P. No. 2023 CV 00143. The complaint asserted that the defendants had been served with 180-day letters pursuant to R.C. 2305.113, which extended the statute of limitations, and thus the action had been timely filed. On February 16, 2023, Tsonis and Margioras voluntarily dismissed the action under Civ.R. 41(A).

**{¶ 9}** On February 14, 2024, with new counsel, Tsonis and her family (collectively, "Tsonis") refiled the action against ASN, Besson, Jones (collectively, "the Anesthesia Defendants"), and MVH. *Tsonis v. Anesthesiology Servs. Network Ltd.*, Montgomery C.P. No. 2024 CV 00907. Nine days later, the Anesthesia Defendants filed a joint answer, denying the allegations and raising several affirmative defenses, including that Tsonis's claim was barred, in whole or part, by the statute of limitations. Four days after that, MVH filed a similar answer.

**{¶ 10}** On May 30, 2024, the Anesthesia Defendants moved for summary judgment on the ground that Tsonis's claims were time-barred. They argued that Besson and Jones had not properly received the 180-day letters and that they had no actual notice of the medical claims. They asserted that as a result, the one-year statute of limitations had not been extended and the action had not been filed within the one-year period, which they claimed began on July 20, 2021, the date of the procedure. ASN further argued that because the claims against Besson and Jones failed, the respondeat superior claim against it must also fail. The Anesthesia Defendants supported their motion with affidavits from Besson and Jones, copies of the 180-day letters to them, and certified mail return receipts regarding the letters.

4

{¶ 11} Tsonis opposed the summary judgment on several bases. First, she argued that the accrual date for the medical claim was not July 20, 2021, as she was in a coma following the procedure. Second, she emphasized that R.C. 2305.113(B)(2), which was added in 2019, dictates how 180-day letters are to be sent, and the statute does not require actual notice. Tsonis stated that she sent the 180-day letters to multiple addresses for each defendant, and although they took a circuitous route, they were timely received. Finally, Tsonis argued that even if the trial court were disinclined to overrule the summary judgment motion on those bases, extensive discovery remained necessary to resolve factual questions regarding non-receipt of the 180-day letters, tolling of the statute of limitations, and other related issues.

{¶ 12} Tsonis attached eight exhibits to her opposition memorandum. She included (1) the certified mail return receipts for Besson and ASN, (2) the certified mail return receipts for Jones, (3) a portion of her medical records, (4) an affidavit from Tsonis, (5) an affidavit from Margioras, (6) an affidavit from Tsonis's first attorney regarding the mailing of the 180-day letters, (7) the Statutory Agent Update form for ASN naming Acme Agent, Inc. as the new agent, and (8) a map, purportedly from ASN's website, showing that ASN's main office was at MVH, located at 1 Wyoming Street.

{¶ 13} In their reply memorandum, the Anesthesia Defendants contended that even if the accrual date were July 23, 2021, the date of Tsonis's discharge, the 180-day letters were still untimely. They attached a portion of the discharge summary from Tsonis's medical records.

{¶ 14} On September 24, 2024, MVH filed a separate motion for summary judgment, also claiming that Tsonis's action was not timely filed. It argued that the one-year statute of limitations expired on July 23, 2022, but the 180-day letters were not received by MVH until

July 27 and 28, 2022. MVH supported its motion with a portion of Tsonis's medical records, copies of certified mail receipts, affidavits from two Premier Health employees regarding receipt of the 180-day letters, a mail receipt log, and copies of several 180-day letters.

{¶ 15} On October 7, 2024, the trial court granted the Anesthesia Defendants' motion for summary judgment. The court concluded that Tsonis's cause of action accrued on the date of her discharge from the hospital on July 23, 2021. In addition, because the 180-day letters were delivered to Besson and Jones on July 28, 2022, the court held that the notices were untimely, irrespective of whether the medical providers received actual notice. The trial court did not address tolling or Tsonis's request for discovery on that issue. The summary judgment decision was interlocutory, as it did not include Civ.R. 54(B) certification and the claims against MVH remained pending.

{¶ 16} The next day, Tsonis moved for reconsideration of the trial court's summary judgment decision on the ground that the court had failed to address tolling. She emphasized that her claim would be timely if Besson or Jones had spent as few as five days outside of Ohio on vacation or for other personal reasons. Tsonis asserted that she was "entitled to conduct discovery to ascertain the whereabouts of the defendants during that one year and five-day time frame. That discovery [was] essential to allow Plaintiffs to submit the necessary information and material to the court, so that the court [could] correctly determine compliance with R.C. 2305.113(A) and (B)."

{¶ 17} The Anesthesia Defendants opposed the motion for reconsideration for several reasons. First, they asserted that the trial court had implicitly rejected Tsonis's tolling argument by not addressing it. Second, they reiterated that actual receipt of the 180-day letter was still required and contended that the reconsideration motion was "nothing more than a request to prolong this litigation," despite Tsonis's failure to conduct discovery

6

expeditiously, file a Civ.R. 56(F) motion, and ensure actual delivery of the 180-day letter. Third, they argued that Tsonis had presented no evidence that Besson and Jones had "left the state, let alone absconded or were attempting to conceal themselves to avoid service." Tsonis responded with a reply memorandum, refuting the Anesthesia Defendant's arguments and attaching an affidavit by her attorney regarding the need for discovery.

{¶ 18} While the motion for reconsideration was pending, Tsonis filed her opposition to MVH's motion for summary judgment. The crucial issue in MVH's motion was the date her cause of action accrued, as the out-of-state tolling provision was inapplicable to the hospital. Tsonis again asserted that her cause of action accrued in August 2021, making her 180-day letter, and thus her action, timely.

{¶ 19} On December 16, 2024, the trial court granted MVH's motion for summary judgment and overruled the motion for reconsideration. The trial court again concluded that Tsonis's cause of action accrued on July 23, 2021, and consequently, her complaint was untimely. As for the motion for reconsideration, the trial court ruled that "Plaintiffs had the opportunity to conduct discovery as to whether Defendants Besson or Jones attempted to abscond by leaving the State of Ohio during the time period at issue. Moreover, Plaintiffs did not offer anything beyond speculative allegations regarding this issue, and the law is clear that Plaintiffs may not rest upon such unsupported allegations in order to meet their burden."

{¶ 20} Tsonis appeals from the trial court's judgments, raising three assignments of error. She challenges the trial court's determination that her cause of action accrued on July 23, 2021 (first assignment), as well as the Anesthesia Defendants' assertion that actual notice of her potential claim was required (second assignment). Tsonis further claims that the trial court erred in not permitting discovery on tolling as to the Anesthesia Defendants (third assignment). We will address the arguments in a manner that facilitates our analysis.

7

## II. Summary Judgment Standard

{¶ 21} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). To that end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).

{¶ 22} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher* at 293. Throughout, the evidence must be construed in favor of the nonmoving party. *Id*.

{¶ 23} We review the trial court's ruling on a motion for summary judgment de novo. *Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524, ¶ 35 (2d Dist.). De novo review means that this court uses the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues of material fact exist for trial. *Ward v. Bond*, 2015-Ohio-4297, ¶ 8 (2d Dist.).

8

### III. Relevant Time-Related Statutes for Medical Claims

{¶ 24} R.C. 2305.113 sets forth time limitations for bringing a medical claim. Under this statute, an action on a medical claim must be commenced within one year after the cause of action accrued. R.C. 2305.113(A). "A claim for medical malpractice accrues, and the one-year statute of limitations begins to run, '(a) when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later.'" *Frysinger v. Leech*, 32 Ohio St.3d 38 (1987), paragraph one of the syllabus; *Wilson v. Durrani*, 2020-Ohio-6827, ¶ 14; *Ruther v. Kaiser*, 2012-Ohio-5686, ¶ 25 ("[A] medical claim accrues upon the later of the termination of the doctor-patient relationship or the discovery of the injury.").

{¶ 25} However, if prior to the expiration of that one-year period a claimant gives written notice to a potential defendant that the claimant is considering bringing an action on the alleged claim, "that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given." R.C. 2305.113(B)(1). The 180-day notice must be sent by certified mail, return receipt requested, and addressed to either (a) the person's residence; (b) the person's professional practice; (c) the person's employer; or (d) the business address of the person on file with the state medical board or other appropriate agency that issued the person's professional license. R.C. 2305.113(B)(2).

{¶ 26} Under R.C. 2305.15(A), the statute of limitations for medical claims set forth in R.C. 2305.113 is tolled during any period when the defendant is out of state, has absconded, or has concealed himself or herself.

{¶ 27} R.C. 2305.16 tolls the statute of limitations when, among other things, the claimant is "of unsound mind." Of relevance here, the first paragraph of the statute provides

9

that if a person is of "unsound mind" when the cause of action accrues, the person may bring the claim within the limitations period after the disability is removed. "Courts have held that such conditions [being of unsound mind], when they occur simultaneously with accrual of the cause of action concerned, may be found to have existed 'at the time the cause of action accrues' for purposes of R.C. 2305.16." *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712, ¶ 29 (2d Dist.); *Al-Mosawi v. Plummer*, 2012-Ohio-6034, ¶ 18 (2d Dist.).

**{¶ 28}** In 2021, "unsound mind" included "all forms of derangement or intellectual disability." Former R.C. 1.02(C); *see* R.C. 5123.01(N) (defining intellectual disability). To define "derangement," the Ohio Supreme Court has looked to the common definition. *See Fisher v. Ohio Univ.*, 63 Ohio St.3d 484, 488 (1992), citing *Webster's Third New International Dictionary* (1986) (equating derangement with insanity). Webster's definition of derangement now includes (1) "a disturbance of normal bodily functioning or operation" and (2) "mental illness." *Merriam-Webster Medical Dictionary Online*, https://www.merriam-webster.com/medical/derangement (accessed Sept. 30, 2025) [https://perma.cc/NTX5-L34W].

**{¶ 29}** The plaintiff has the burden of proving that he or she was suffering from some form of derangement or intellectual disability "so as to be unable to look into his [or her] affairs, properly consult with counsel, prepare and present his [or her] case and assert and protect his [or her] rights in a court of justice." *Bowman v. Lemon*, 115 Ohio St. 326 (1926), paragraph three of the syllabus; *see, e.g.*, *Al-Mosawi* at ¶ 18; *Rose v. Primc*, 2021-Ohio-3054, ¶ 56 (2d Dist.).

### IV. Notice under R.C. 2305.113(B)

**{¶ 30}** We begin with the question of when the Anesthesia Defendants were given notice of Tsonis's potential claim under R.C. 2305.113(B). The Anesthesia Defendants

10

argue that *Edens v. Barberton Area Family Practice Ctr.*, 43 Ohio St.3d 176 (1989), governs and that actual notice continues to be required, despite the addition of R.C. 2305.113B(2) in 2019. They contend that because they did not receive actual notice of the 180-day letters until discovery commenced in this action (a time well past the one-year limitations period), the 180-day letters were ineffective and Tsonis's initial action was brought after the statute of limitations had expired. We disagree that actual notice is still required, and we need only look to *Edens* to reach this conclusion.

{¶ 31} In *Edens*, the Ohio Supreme Court was asked to decide whether, under former R.C. 2305.11(B)(1), notice was effective when the 180-day letter was mailed or when it was received. To answer the question, the Court focused on whether the statute provided the manner in which notice was to be given. The Supreme Court noted that it had previously held that "[w]here a statute requires notice of a proceeding, but is silent concerning its form or manner of service, actual notice will alone satisfy such requirement." *Edens*, 43 Ohio St.3d at 179, quoting *Moore v. Given*, 39 Ohio St. 661 (1884), paragraph two of the syllabus. The Court had previously affirmed *Moore*'s holding in *State ex rel. Peake v. Bd. of Educ.*, 44 Ohio St.3d 119 (1975) (where statute required notice of termination of a teacher's contract but the manner of giving notice was not specified, actual notice was required).

{¶ 32} The *Edens* Court highlighted that it had distinguished statutes in which a manner of providing notice *was* given. *Edens* at 179 (discussing *Castellano v. Kosydar*, 42 Ohio St.2d 107 (1975)). In *Castellano*, the statute at issue stated that notice could be served personally or by registered or certified mail. The *Edens* Court explained that "[b]ecause of this difference, *Moore* was not applicable and we held that although the taxpayers did not actually receive notice of the tax assessment, service was deemed

11

effective when notice was delivered and properly receipted for by an appropriate person."
*Id*.

{¶ 33} Turning to the case before it, the *Edens* Court applied *Moore* to former R.C. 2305.11(B). At that time, R.C. 2305.11(B)(1) read:

> [A]n action upon a medical . . . claim shall be commenced within one year after the cause of action accrues, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical . . . claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

Because former R.C. 2305.11(B)(1) was silent concerning the form or manner of service of the written notice, the Supreme Court followed its precedent that actual notice was required. Accordingly, it held that the 180-day period commenced when notice was received, not when it was mailed. *Id*. at 180.

{¶ 34} The addition of R.C. 2305.113(B)(2) in 2019 takes the statute out of *Moore*'s purview. R.C. 2305.113(B)(2) provides that a claimant

> shall give that [180-day] notice by sending it by certified mail, return receipt requested, addressed to any of the following:
>
> (a) The person's residence;
>
> (b) The person's professional practice;
>
> (c) The person's employer;
>
> (d) The business address of the person on file with the state medical board or other appropriate agency that issued the person's professional license.

12

R.C. 2305.113(B) is no longer silent about the manner of providing notice. Accordingly, as the Supreme Court held in *Castellano*, *Moore* is not applicable and notice under R.C. 2305.113(B) is deemed effective when "delivered and properly receipted for by an appropriate person." *Edens*, 43 Ohio St.3d at 179.

{¶ 35} The Anesthesia Defendants cite two cases decided since the 2019 amendment of R.C. 2305.113(B)—*Sullivan v. Mercy Health*, 2022-Ohio-4445 (12th Dist.) and *Herrick v. Zaghlool*, 2022-Ohio-2994 (3d Dist.)—to support their assertion that actual notice continues to be required. While both cases state that the 180-day notice is not effective until received, neither addresses whether "received" continues to mean "actual notice." *Sullivan* at ¶ 22; *Herrick* at ¶ 26. Nevertheless, to the extent that they imply that actual notice is still required, we find them unpersuasive given the clear guidance from *Edens.*

{¶ 36} Tsonis's second assignment of error is sustained.

### V. Effective Date of the 180-Day Letters

{¶ 37} We therefore turn to when the 180-day letters were delivered in this case. The letters to MVH were received on July 27 and July 28, 2022, as described in detail in the affidavits of two Premier Health employees and substantiated by the receipt log maintained by one of those employees. It is undisputed that ASN received a 180-day letter on July 15, 2022, which was within one year of any potential accrual date. However, because ASN's respondeat superior liability depends on the claims against Besson and Jones, the timeliness of the claims against Besson and Jones is dispositive of the claims against ASN as well.

{¶ 38} The certified mail return receipts for Besson and Jones showed that they were signed by Jordan Scott, who checked the box indicating that he was an agent; Scott did not

13

write in the delivery date in the space provided. The return receipt was date-stamped by the nearby Wright Brothers Post Office, but the date is difficult to read. Nevertheless, there appears to be no dispute that the letters were delivered on July 28, 2022.

**{¶ 39}** Besson and Jones both stated in their affidavits that neither they nor one of their agents signed for the letters. They wrote that "[t]he 180-day letter bearing my name was sent to the address of co-Defendant Miami Valley Hospital and signed for by 'Jordan Scott'. Jordan Scott is not known to me, employed by me or associated with myself and is not my agent." Besson Aff., ¶ 5; Jones Aff., ¶ 5.

**{¶ 40}** Besson's and Jones's affidavits were insufficient to demonstrate that the 180-day letters were not properly delivered. Neither Besson nor Jones provided evidence that 1 Wyoming Street, the address of the hospital, was not a proper location to which to send the 180-day letters under R.C. 2305.113(B). In contrast, Tsonis provided an exhibit purportedly from ASN's website showing that its offices were located at MVH and thus mail directed to the hospital address at least satisfied R.C. 2305.113(B)(2)(c), which authorized the letters to be sent to address of their employer. Tsonis's exhibit was not authenticated, but the Anesthesia Defendants did not raise lack of authentication in the trial court and thus waived any such objection. *See, e.g., American Tax Funding v. Whitlow*, 2010-Ohio-3333, ¶ 13, fn. 3 (an objection to the lack of authentication of summary judgment evidence is waived if not raised in the trial court).

**{¶ 41}** Next, nothing on the return receipts indicated that the 180-day letters were delivered to an address different from the hospital's address. Although the receipts provided a space for an address to be listed if the mail were delivered to a different address, those sections were left blank. Even accepting that Jordan Scott was not Besson's or Jones's agent, the Anesthesia Defendants provided no evidence that the 180-day letters were

14

delivered to an individual who lacked authority to accept mail at that location. Accordingly, construing the evidence in the light most favorable to Tsonis, the 180-day letters to Besson and Jones were effective on July 28, 2022.

### VI. Accrual of Medical Claim

{¶ 42} We next consider when the statute of limitations for Tsonis's medical claim began to run, particularly whether that date was before or after July 27, 2021 (MVH) and July 28, 2021 (the Anesthesia Defendants). Tsonis's first assignment of error argues that the trial court failed to construe the evidence in the light most favorable to her when it determined that the accrual date was July 23, 2021, the date of her discharge from the hospital, rather than mid-August 2021 at the earliest.

{¶ 43} The parties have focused only on the discovery rule. Although both Tsonis and the Anesthesia Defendants acknowledged that Dr. Besson had a lengthy phone call with Tsonis on August 19, 2021, Tsonis did not assert that her physician-patient relationship with Besson extended until that phone call. Accordingly, we likewise limit our discussion to when Tsonis discovered or reasonably should have discovered her injury.

{¶ 44} In determining the accrual date under the discovery rule, courts must look to the facts and circumstances of each particular case and decide (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his or her condition; (2) whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered; and (3) whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of that condition. *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1 (1987), paragraph one of the syllabus; *Rose v. Tievsky*, 2021-Ohio-3051, ¶ 54 (2d Dist.). "The inquiry is thus whether the plaintiff has information of circumstances, obtained with or

15

without additional medical evaluations, sufficient to put a reasonable person on inquiry, or had the opportunity to obtain knowledge from sources open to his or her investigation, concerning the cause of the condition." *Hershberger*, 34 Ohio St.3d at 5.

{¶ 45} "The 'extent and seriousness of his condition' language of the test set forth in *Hershberger* . . . requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his [or her] possible remedies." *Allenius v. Thomas*, 42 Ohio St.3d 131 (1989), syllabus.

{¶ 46} "The cognizable-event analysis allows a patient to reasonably rely on his [or her] physician's assurances while placing a continuing duty on the medical profession to act with the requisite skill and care." *Herr v. Robinson Mem. Hosp*., 49 Ohio St.3d 6, 9-10 (1990). However, "[i]f a patient believes, based on a known injury, that her treating medical professional has done something wrong, that belief is sufficient to alert the patient to the need to investigate and pursue a remedy." *Schmitz v. Natl. Collegiate Athletic Assn*., 2018-Ohio-4391, ¶ 22, citing *Allenius* at 133.

{¶ 47} "[T]he test for determining when a cognizable event has occurred is objective rather than subjective." *Kaplun v. Brenner*, 2000 WL 234707, *4 (2d Dist. Mar. 3, 2000). Thus, the question is whether the event would place a reasonable person, not the patient specifically, on notice.

{¶ 48} The Anesthesia Defendants initially relied on the allegations in Tsonis's complaint, which stated that Tsonis presented to MVH for an electrophysiology study to be performed while she was intubated and under general anesthesia. Complaint, ¶ 12. She further alleged that Jones "inserted the endotracheal tube into the esophagus (pathway to

16

the stomach) rather than properly placing the endotracheal tube into the trachea (airway), and fail[ed] to recognize the error for approximately 15-20 minutes." Complaint, ¶ 14.

{¶ 49} In response to the Anesthesia Defendants' motion for summary judgment, Tsonis provided a portion of her hospitalization records, which showed that on July 20 she "underwent general anesthesia complicated by esophageal intubation and hypoxic episode. EP study and ablation was cancelled." Tsonis Ex. 3. In addition, she "had approximately 15 minutes of total time with ET tube in esophagus prior to being extubated and re intubated." As a result, Tsonis had hypoxic ischemic encephalopathy, was comatose, and needed a ventilator until the next day.

{¶ 50} In their reply memorandum, the Anesthesia Defendants asserted that the cognizable event "was the aborted planned cardiac procedure due to an unexpected and unforeseen anesthesia complication." After acknowledging that Tsonis was unconscious during and after the procedure, they argued that the discharge date (July 23, 2021) was the appropriate beginning of the statute of limitations, and they attached Exhibit G, consisting of two pages of Tsonis's discharge instructions (pages MVH000192-MVH000193). Page MVH000193 indicated that on July 23, 2021, "brain imaging was negative for acute anoxic injury. There were no overt focal deficits neurologically however she was noted to have some short term memory issues." The bottom of page MVH000193 further stated that Tsonis was stable and was being discharged to her home. The reply brief quoted a portion of MVH000194, which purportedly provided instructions about medication and following up with her primary care physician and a neurologist. However, Exhibit G did not include page MVH000194.

{¶ 51} In support of its motion for summary judgment, MVH provided a different excerpt of Tsonis's medical records to show that the statute of limitations began to run prior

17

to July 27, 2021, when it first received a 180-day letter. MVH Ex. A-1. One portion of the records consisted of physical therapy progress notes from the date of Tsonis's discharge. The second page of those notes indicated that Tsonis was "expressing insight into the medical course that led to admission to the ICU" and that she had "improved memory of recent events of the day." She was assessed as "alert," "cooperative," and oriented as to person, place, and situation. However, Tsonis did not recall having worked with therapy the previous day. The notes also described how she had been asked to unscramble the letters of her name, which had been written on seven sticky notes; Tsonis created three four-letter words and was given the first-letter hint before she successfully completed the task.

{¶ 52} MVH Exhibit A-1 also included triage notes from Tsonis's emergency room visit on July 26, 2021, for a migraine and blurred vision. According to those notes, Tsonis reported that she was "on blood thinners that she started last week, was in the ICU after 'they messed up my intubation.'"

{¶ 53} Tsonis presented evidence that she does not remember what occurred during her hospitalization and that her memory over the following weeks was "very jumbled, disjointed and difficult to keep straight." Tsonis Aff., ¶ 6. She stated that she did not begin to feel less disoriented until mid-August 2021. *Id.* at ¶ 7. Her husband described her as "continu[ing] to have memory deficits, was forgetful and would lose track of what she was talking about or wanted to say, sometimes in mid-sentence." Margioras Aff., ¶ 7.

{¶ 54} Construing the evidence in the light most favorable to Tsonis, the cognizable event objectively occurred on July 20, 2021. Tsonis's own evidence established that on July 20, 2023, a complication with intubation during her cardiac procedure caused Tsonis to become comatose, require a ventilator, and suffer hypoxic ischemic encephalopathy. Her scheduled procedure—the electrophysiology study—was cancelled. A reasonable person

18

would have believed that Tsonis's ongoing memory issues were related to complications during the July 20 medical procedure and would have been on notice of the need to pursue possible remedies.

**{¶ 55}** Tsonis suggests that she was told that the complications with her anesthesia were due to a bronchospasm on intubation and that she reasonably relied on that explanation. Tsonis's medical records include a post-anesthesia note by Besson in which he wrote "<u>Complications</u>: Pt with bronchospasm on intubation and then dislodged endotracheal tube resulting in hypoxic episode." Tsonis Ex. 3, p. 491. But neither Tsonis nor her husband indicated in their affidavits that they were given this explanation for the complications. Her husband simply stated that he "learned that she had a complication involving anesthesia, which no healthcare provider attributed to substandard care." Margioras Aff., ¶ 5. Tsonis provided no evidence to support a conclusion that the cognizable event was delayed due to her reliance on statements by her medical providers; it was irrelevant that no one told Tsonis that the complications were due to medical negligence. *See Hershberger*, 34 Ohio St. at 5 (it is the occurrence of a cognizable event rather than knowledge of its legal significance that starts the statute of limitations).

**{¶ 56}** Tsonis's primary claim is that due to her significant memory issues, she could not have discovered her injury and thus her cause of action did not accrue until mid-August 2021. Although Tsonis focuses on the accrual date, the more appropriate question may be whether Tsonis was "of unsound mind" from July 20, 2021 until mid-August 2021 such that the statute of limitations was tolled. Regardless of the analytical approach, we agree with Tsonis that a genuine issue of material fact exists as to whether her brain injury delayed the running of the statute of limitations until after July 27, 2021, (MVH) or July 28, 2021 (Anesthesia Defendants).

19

{¶ 57} There is no dispute that on July 20, 2021, Tsonis was comatose and unable to appreciate that she had been injured. The parties now appear to agree that due to her medical condition, the statute of limitations did not run on July 20-22, 2021.

{¶ 58} MVH's evidence established that by July 23, 2021, Tsonis was awake, oriented, and aware that she had been admitted to the ICU due to complications with her anesthesia during her planned procedure, which was then cancelled. The physical therapy notes indicated, however, that she continued to have memory issues, including that she could not remember having received therapy the previous day. Her difficulty unscrambling the letters of her name further suggested other cognitive impairments. The discharge summary provided by the Anesthesia Defendants noted that short-term memory issues remained.

{¶ 59} By July 26, 2021, Tsonis apparently believed that there had been a mistake made with her intubation, as she expressed that opinion to the triage nurse at the emergency department when she went for treatment for a migraine. This belief arguably triggered the running of the statute of limitations.

{¶ 60} However, construing the evidence in the light most favorable to Tsonis, she had significant cognitive issues when she was discharged on July 23, 2021. Tsonis's and Margioras's affidavits indicated that her memory issues persisted for several weeks and continued to linger. Her memories in the weeks following her hospitalization were "very jumbled, disjointed and difficult to keep straight." Tsonis's evidence thus reasonably supported a conclusion that as a result of her brain injury, she was unable to manage her affairs, consult with counsel, present her case, or protect her rights as to her medical claim. In short, genuine issues of material fact existed as to whether Tsonis's mental impairment from her brain injury delayed the running of the statute of limitation until mid-August 2021.

20

Accordingly, the trial court erred in granting summary judgment to the Anesthesia Defendants and MVH on the ground that Tsonis's complaint was untimely.

{¶ 61} Tsonis's first assignment of error is sustained.

### VII. Tolling under R.C. 2305.15(A) and Civ.R. 56(F)

{¶ 62} Tsonis's third assignment of error claims that the trial court erred in failing to permit discovery on tolling under R.C. 2305.15(A) as to the Anesthesia Defendants. Because the 180-day letters were delivered to Besson and Jones on July 28, 2022, they were delivered more than a year after the statute of limitations had begun to run, absent tolling under R.C. 2305.15(A).

{¶ 63} The Anesthesia Defendants raise numerous issues related to Tsonis's claim: (1) whether Tsonis filed a Civ.R. 56(F) motion; (2) whether any such motion was supported by a proper affidavit; (3) the extent to which Tsonis had an opportunity to conduct discovery on tolling; (4) whether R.C. 2305.15(A) concerns only leaving the state for the purpose of absconding or concealment; and (5) whether the Dormant Commerce Clause precludes application of R.C. 2305.15(A) to Besson and Jones. We find the Anesthesia Defendants' arguments unpersuasive.

{¶ 64} Civ.R. 56(F) "affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it." *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-69 (8th Dist. 1978), citing Civ.R. 56(F). Under the rule, the party opposing summary judgment must submit an affidavit explaining why it cannot "present by affidavit facts essential to justify the party's opposition" to the summary judgment motion. *Chen v. Univ. of Dayton*, 2023-Ohio-4002, ¶ 44 (2d Dist.), citing Civ.R. 56(F). If the opposing party's affidavit states sufficient reasons, the trial court may deny the summary judgment motion or may

21

"order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." *Id*.

**{¶ 65}** "Pursuant to Civ.R. 7(A), the grounds for a Civ.R. 56(F) motion for a continuance must be stated with particularity." *Doriott v. MVHE, Inc*., 2004-Ohio-867, ¶ 40 (2d Dist.). Mere allegations requesting a continuance for the purpose of discovery are not sufficient reasons. *Id*.; *Gates Mills Inv. Co.* at 169. Rather, "[t]here must be a factual basis stated and reasons given why [the non-moving party] cannot present facts essential to its opposition to the motion." *Doriott* at ¶ 40. While the party opposing summary judgment is not required to specify what facts it hopes to discover, the court must be convinced that there is a likelihood of discovering some such facts. *Id*. at ¶ 41. "[A] claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery." *Id*.

**{¶ 66}** We review the trial court's determination of a Civ.R. 56(F) motion for an abuse of discretion. *Chen* at ¶ 46, citing *Johnson v. Clark Cty. Aud*., 2020-Ohio-3201, ¶ 21 (2d Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 67}** The Anesthesia Defendants initially argue that Tsonis failed to file a Civ.R. 56(F) motion, and even if she had filed such a motion, it was not supported by an appropriate affidavit. It is true that Tsonis did not file a separate document delineated as a Civ.R. 56(F) motion. However, she included a separate section to her memorandum in opposition to summary judgment requesting an opportunity for additional discovery on tolling under R.C. 2305.15(A) should the trial court determine that the 180-day letters were not received within the one-year statute of limitations. This section is reasonably construed as a Civ.R. 56(F) motion, even though the rule was not cited.

22

**{¶ 68}** In her motion for reconsideration, Tsonis reiterated that discovery on whether Besson or Jones had left the state of Ohio for vacation or other personal reasons was necessary to properly determine whether the 180-day letters were delivered during the limitations period. Her reply memorandum included an affidavit from her attorney reiterating that he had previously raised that discovery would be needed on the out-of-state tolling provision if the court did not agree with Tsonis on when the cause of action accrued. Adkinson Aff., ¶ 3. Tsonis's attorney further indicated:

11. Obviously, Plaintiffs do not have informal access to the Defendants' calendars and personal schedules and need to have the written discovery completed, and to take depositions of their office manager and/or assistant and/or scheduling person.

12. Plaintiffs submit that given the defendants['] professions and likely income, the probability of Defendants traveling out of State for personal reasons is incredibly high[.]

13. The number of days out of State would be impossible to know without discovery, and therefore definitely warrant pertinent inquiries.

Adkinson Aff., ¶ 11-13.

**{¶ 69}** The Anesthesia Defendants argued that Tsonis's counsel's affidavit could not be considered because Civ.R. 56(F) requires the affidavit to come from the party only. We have never read Civ.R. 56(F) in that manner. Rather, we have long stated that Civ.R. 56(F) "requires the motion to be supported by an affidavit containing 'sufficient reasons why (the nonmoving party) cannot present by affidavit facts sufficient to justify its opposition' to the summary judgment motion." *Doriott*, 2004-Ohio-867, at ¶ 40 (2d Dist.). An affidavit from counsel, who typically is in the best position to articulate the reasons why the party cannot

23

yet respond to the summary judgment motion, is sufficient to satisfy the affidavit requirement. *See, e.g. Trinity Financial Services v. Unknown Heirs of King,* 2024-Ohio-2377, ¶ 20 (2d Dist.); *Chen,* 2023-Ohio-4002, at ¶ 51 (2d Dist.); *Shamblin v. Bob Evans Farms, LLC,* 2020-Ohio-4238, ¶ 26 (2d Dist.). Accordingly, the trial court was presented with a properly supported Civ.R. 56(F) motion via the motion for reconsideration.

**{¶ 70}** The trial court rejected Tsonis's request for additional time to conduct discovery on out-of-state tolling and denied her request for reconsideration on the grounds that she "had the opportunity to conduct discovery as to whether Defendants Besson or Jones attempted to abscond by leaving the State of Ohio during the time period at issue" and that she did not "offer anything beyond speculative allegations regarding this issue" in responding to the summary judgment motion. On the record before us, the trial court's conclusion was an abuse of discretion.

**{¶ 71}** First, the trial court's decision appears to have been influenced by its mistaken understanding that the out-of-state tolling provision was limited to circumstances where the defendant-medical providers attempted to abscond or conceal themselves. During all relevant times, R.C. 2305.15(A) read:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action . . . does not begin to run until the person comes into the state or while the person is so absconded or concealed. *After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.*

(Emphasis added.) Former R.C. 2305.15(A).

24

{¶ 72} In *Permanent Gen. Ins. Cos., Inc. v. Dressler*, 130 Ohio App.3d 628 (1st Dist. 1998), a case cited by the Anesthesia Defendants, the First District stated that R.C. 2305.15 "was meant to avoid the loss of a meritorious claim because a diligent plaintiff was prevented from timely bringing an action because a defendant absconded or concealed himself to avoid service of process." *Id*. at 632. The First District rejected an interpretation that R.C. 2305.15 tolled the statute of limitations where the defendant's absence from Ohio did not affect the plaintiff's ability to timely file an action. *Id*.

{¶ 73} However, two years later in *Johnson v. Rhodes*, 89 Ohio St.3d 540 (2000), the Ohio Supreme Court made clear that R.C. 2305.15 tolls the statute of limitations when an individual temporarily leaves the state of Ohio for non-business reasons and, further, that application of the statute against such an individual did not constitute an impermissible burden on interstate commerce in violation of the Commerce Clause. The Court thus applied R.C. 2305.15(A) to toll the statute of limitations for the ten days during which the individual defendant had traveled to Kentucky for vacation. *Id*.

{¶ 74} In accordance with *Johnson*, Tsonis's action against the Anesthesia Defendants would be timely if Besson or Jones had left Ohio for any nonbusiness reason for five days during the one-year limitations period. Although there may have been little likelihood that Besson or Jones absconded during the one-year limitations period, the same cannot be said about out-of-state travel for vacation or other personal reasons. And, whether Besson or Jones travelled out of state for personal reasons was not something Tsonis could have been expected to know without discovery on that issue. Tsonis's initial request for additional time to conduct discovery on out-of-state tolling was a reasonable one.

{¶ 75} Second, the record does not support the conclusion that Tsonis's actions warranted rejecting her request for additional time for discovery. Tsonis had voluntarily

dismissed her first complaint shortly after it was filed, and the refiled litigation was still in its early stages when the Anesthesia Defendants moved for summary judgment on May 30, 2023 (approximately three months after filing their answer). At that point, some discovery had occurred, although the record does not indicate what was exchanged. The court had not yet held a scheduling conference, which was set for June 4, 2023.

{¶ 76} On June 3, the trial court established a briefing schedule for the summary judgment motion and indicated that the motion would be submitted for decision on July 8, 2024. Three weeks later, the court issued a final pretrial order, setting a trial date of January 26, 2026. In her July 1, 2024 response to the Anesthesia Defendants' summary judgment motion, Tsonis argued that the motion was premature and that extensive discovery would need to occur if the court concluded that actual notice of the 180-day letters was still required or that the cause of action accrued on the day of the cancelled procedure.

{¶ 77} In August 2024, Tsonis's attorney requested depositions of various people associated with MVH and the Anesthesia Defendants. Adkinson Aff., ¶ 8. The Anesthesia Defendants acknowledge that on August 19, 2024, Tsonis's counsel had emailed counsel for the Anesthesia Defendants, indicating that he wanted to schedule depositions of Besson and Jones for early October 2024. Anesthesia Defendants Ex. D (Oct. 24, 2024). Tsonis's counsel repeated his request about six weeks later, but "it became apparent that cooperation would not be forthcoming." Adkinson Aff., ¶ 8.

{¶ 78} On October 2, 2024, the Anesthesia Defendants and MVH filed a joint motion to stay discovery while their summary judgment motions were pending. The next day, Tsonis served her second request for production of documents to Besson and Jones, which requested evidence related to Besson's and Jones's being out of state during the limitations

26

period. *See* Anesthesia Defendants Ex. B and C (Oct. 24, 2024); Adkinson Aff., ¶ 9. The trial court granted summary judgment to the Anesthesia Defendants on October 7, 2024.

{¶ 79} Although Tsonis's attorney could have proceeded more quickly with discovery related to tolling and other issues related to the statute of limitations, Tsonis provided evidence that the Anesthesia Defendants were not cooperative with discovery and failed to respond to requests to schedule depositions. The Anesthesia Defendants had also formally sought to halt discovery while their motion for summary judgment was pending. They certainly had no reason to respond to Tsonis's second request for production of documents once the trial court granted their motion for summary judgment. On this record, the trial court unreasonably blamed the lack of discovery entirely on Tsonis.

{¶ 80} In our view, summary judgment in favor of the Anesthesia Defendants was premature. Rather, the matter must be remanded for Tsonis to have an opportunity to conduct discovery on whether her claim was timely due to tolling under R.C. 2305.15(A). Tsonis's third assignment of error is sustained.

## VIII. Conclusion

{¶ 81} The trial court's judgments are reversed, and the matter is remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.

27